## BENJAMIN WALTON

### *v.*

## WILLIAM WESTWOOD.

1. TAXATION—*of property in hands of agents.* Grain in a mill or warehouse, in the possession of an agent, and controlled by him, on the first day of May, and which was bought by him for other parties for a commission paid by them, is properly assessed against him, and he is liable for the taxes thereon for that year, and has a lien on the grain until indemnified against the payment of the tax, or, if he has paid it, until he is reimbursed.

2. SAME—*property in transitu.* Property going or being taken from one county in the State to another county, is *in transitu,* within the meaning of the law, and not liable to taxation in the county or counties through which it passes, and when it reaches the residence of the owner, it becomes taxable there, if not assessed at the place of its departure; but grain purchased by one as agent, and stored in his warehouse subject to the order of the owner, can not be said to be *in transitu* so as to exempt the agent from taxation thereon.

3. SAME—*who is a consignee.* Nor can the agent who so purchased and holds grain for another be regarded as a consignee of the grain, within the meaning of the Revenue Act of 1872, which provides that consignees shall not be required to list for taxation property in their hands.

4. EQUITY PLEADING—*what a demurrer admits.* A demurrer to a bill in chancery admits only such facts as are positively charged, and when the averment is, that complainant is informed and believes that certain things are true, the demurrer admits the fact that complainant is so informed and does so believe, but not that such information is true.

APPEAL from the Circuit Court of Livingston county; the Hon. N. J. PILLSBURY, Judge, presiding.

Mr. A. E. HARDING, for the appellant.

Mr. L. E. PAYSON, for the appellee.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This is an appeal from a decree of the circuit court of Livingston county, dissolving an injunction and dismissing a bill filed in that court, by appellant, to restrain the collector of taxes of Indian Grove township from the collection of certain taxes assessed upon property in the possession of, and under the control of, appellant at the time the assessment was made by the proper assessor, on the allegation that the taxes so assessed against him "were unauthorized by law, wholly illegal, absolutely void, and a fraud upon his rights."

There was a demurrer to the bill, which the court sustained, and this brings up the merits of the controversy.

It appears appellant was engaged in operating a grist mill and flouring mill, and also in purchasing grain for distant parties on a commission paid by them; that, in May, 1873, when the assessor called upon him for a list of his taxable property, he made the same out and delivered it to the assessor. This functionary then demanded of appellant a list of all personal property then in his possession, or under his control, belonging to other parties. This demand was complied with, and a list made out and delivered to the assessor, of grain in store belonging to other parties, amounting, in the aggregate, to more

than twelve thousand dollars in value, subject to the order of the owners. In March, 1874, appellee, as collector of the town, called on appellant, and demanded the tax assessed against this property, and so listed by appellant, and threatened to distrain if the tax was not paid.

Appellant states, as his information and belief, that this property had been listed for taxation in the respective towns in which the owners lived, and the same was regularly assessed against them in those towns respectively, and that they have been fully paid by them to the collectors of the respective towns.

The proper construction of several sections of the Revenue Act of March 20, 1872, is involved in this case, and we have given it full consideration.

Section 5 of the Revenue Act provides that personal property shall be listed between the first day of May and the first day of July of each year, when required by the assessor, with reference to the quantity held or owned on the first day of May in the year for which the property is required to be listed. R. S. 1874, p. 858.

Appellant, in obedience to this requirement, listed this property as held by him on the first day of May.

The second clause of section 6 provides that every person designated in the first clause of the section, of which appellant is one, shall list all moneys and other personal property invested, loaned or otherwise controlled by him as the agent or attorney of another, etc.

Section 9 provides that the property of manufacturers and others, in the hands of agents, shall be listed and assessed at the place where the business of such agent is carried on.

These provisions of the statute would seem to have a clear application to the facts of this case, and to determine it against appellant, for he listed the property as held by him on the first day of May—he listed the property as property controlled by him as the agent of others, and if it was the property of manufacturers or others, in his hands as their agent, it was listed and assessed at the place of business of the agent.

, Appellee insists appellant was not an agent, in the sense of this statute, and cites section 11 of the act, which provides that personal property *in transitu* shall be listed and assessed in the county, etc., where the *owner* resides. He also cites section 18 in support of his position. That section provides that no consignee shall be required to list for taxation the value of any property consigned to him for the sole purpose of being stored or forwarded, except to the extent of his interest in such property. He also cites section 256 of the act, which provides, when property is assessed to any person as agent for another, he shall have a lien upon such property, or property of his principal in his possession, until he is indemnified against the payment thereof, or, if he has paid the tax, until he is reimbursed for such payment.

Appellant contends that this case is properly ranged under sections 11 and 18. If he is correct in this, he was not properly chargeable with the taxes on this property. We can not concur in the view he takes of his position. In buying this property and storing it, appellant was acting for others; consequently, he was their agent in doing these acts; he received a commission for his labor and skill in purchasing, precisely as any other agent would, and it was his own principal business buying grain and grinding it into flour. How this property, when stored in appellant's warehouse, can be said to be *in transitu*, is difficult to understand. Goods or property are, technically, *in transitu* when they are passing from one place to another, which was not the case with this grain. It had not commenced its transit from one place to another. The law means that property going or being taken from one county in the State to another county shall not be assessed in a county through which it is passing. It is then *in transitu*, and when it reaches the residence of the owner, becomes taxable there, if not assessed at the place of its departure.

Nor can appellant be regarded as a consignee of this grain. He was in no sense such. He was a purchaser of the grain as agent for others, and held it as their agent, and it was under his control as such. The grain was not consigned to him for

storage or for forwarding. This term, consign, or consignment, has a legal and technical meaning, and we can give it no other. Appellant's own statement, that he bought the corn on a commission of a certain per cent on the bushel, dispels all idea of a consignment, in the sense of the statute. Suppose the owners of this grain did not reside in this State, but in another State, and it was forwarded to them after the first day of May, would it not escape taxation? The grain had been raised in this State, purchased and paid for, and was in a warehouse in this State, held and controlled by a tax-payer of this State on the first day of May, and listed by him as taxable on that day. It was not property *in transitu*—it was not a consignment, but was property appellant held and controlled as agent, and why should he not pay the taxes assessed against it? And where is the hardship of it, in view of section 256, which gave him a lien upon the property, and which could not have been taken out of his possession by the several owners of it, until he was indemnified against the payment of the taxes? It is his own fault and negligence that he is damnified, when it was in his power to have prevented it by asserting his lien.

Again, suppose the owners of the property permitted it to remain with appellant, as their bailee, for a year or more, would it be construing this statute fairly to say, notwithstanding the property was protected by our laws, it shall pay no taxes to the government which protects it? It is the purpose of the Revenue Law of 1872 to raise the means, by taxation of property within the jurisdiction of the State, for the support of the State. This grain, if the injunction was sustained, would not do so. But it is urged it is alleged in the bill that the taxes have been paid by the owners, and the demurrer admits the fact. We do not understand it is so alleged in the bill. It is simply alleged that complainant is informed and believes such is the fact. The fact is not so charged in the bill. There is no allegation that the taxes were in fact paid by the owners. The demurrer admits only what is directly charged as fact, and in this respect it admits, only, that com-

plainant has been so informed and believes.   This he states as a fact, and this the demurrer admits.

We do not concur with appellant in the opinion that sections 6, 9 and 256, contemplate possession of a permanent character, and ceases where the agent has some right or interest in the property, for this is not usually the condition of property in the hands of an agent.   His possession is almost always of a temporary nature, having no right or interest in the property itself.   The whole scope of the act forbids such an idea.   It seems to us section 256 contains a strong affirmation of the liability of the agent to pay the taxes on property so situated, by fully recognizing his right of lien until he is indemnified.

This property, then, not being *in transitu* on the first day of May, nor consigned to appellant, but held and controlled by him as agent on that day, it came under the taxing power of the State, and subject to our revenue laws.

For these reasons the decree of the circuit court is affirmed.

*Decree affirmed*