CARLISLE, COUNTY TREASURER, FOR THE USE, ETC., v. THE PULLMAN PALACE CAR COMPANY.

1. The constitution of this state, and the laws passed in pursuance thereof, subject all property, real and personal, within the state to taxation, that shall not be expressly exempted by law.

2. Transitory personal property must have a *situs* for taxation, or it is not subject to any jurisdiction, and under the facts of this case *held* that the property in controversy being under the control and in the possession of railroad companies operating within this state, gave the sleeping cars of the non-resident defendant the same *situs*, under the statute, applicable to this class of property, as articles of the same class owned by such railroad companies.

3. The imposition of a tax is a legislative act, and the property to be taxed as well as the mode of taxation is subject to legislative control.

4. The purposes of the statute are apparent, that the entire property employed by railroad corporations in this state is to be subjected to taxation by a mode convenient and equitable to all concerned.

5. It was the legislative design to confer exclusive jurisdiction for the assessment of the property under consideration in this case on the state board of equalization, and at the same time, the want of jurisdiction in the county authorities.

6. The statute imposes upon the railway officials the duty of reporting to the state board all personal property employed by them in the operation of their roads, without regard to the question of ownership.

*Error to District Court of Pueblo County.*

THE facts are stated in the opinion.

Mr. G. Q. RICHMOND and Messrs. BAILEY and WILKIN, for plaintiff in error.

Messrs. MARKHAM, PATTERSON and THOMAS, for defendant in error.

BECK, C. J.   This action was instituted in the district court of Pueblo county against the defendant in error, for the recovery of money alleged to be due the county on account of taxes assessed by the county authorities, against the defendant in error, upon certain sleeping cars used upon the passenger trains of the Denver & Rio Grande, and the Atchison, Topeka & Sante Fe railroads. The court below decided against the authority of the county to levy the taxes, and this writ of error is prosecuted in behalf of the county to test the correctness of the decision.

The cause has been submitted upon an agreed statement of facts, which discloses, among other facts, that similar controversies exist in other counties, and that the final decision in this case is to operate as a determination of them also.

We learn from the stipulation that Pullman's Palace Car Company, the defendant in error, is a non-resident manufacturing company, organized and doing business under the laws of the state of Illinois, where its home office is located.   A portion of the business of defendant in error is the building of sleeping cars, and hiring them out to railway corporations throughout the country, to be by them operated upon their lines of railroad, for the joint profit of both contracting parties.   These contracts, all of which are similar, are to the effect that the Pullman Company will furnish to a railroad company, for a term of fifteen years, a sufficient number of sleeping cars to meet the requirements of travel over all lines of railway owned or operated by the railroad company. The cars are to be hauled by the railroad company over the various lines of the road now or hereafter to be owned or controlled by said company, and employed in the transportation of travelers for its profit, in such manner as in the judgment of the general manager or superintendent of the railroad may be best to accommodate passengers.   The railroad company is to keep the

cars in good running order and repair, and to bear certain running expenses, including light, fuel, lubricating material and ice; also to bear the expenses of all repairs rendered necessary by accident or casualty. The Pullman Company is to provide the cars, keep the carpets, upholstery and bedding in good and cleanly condition; furnish necessary employees to preserve order in the cars; collect berth and couch fares, and take proper charge and care of the inside of the cars; in consideration whereof, the Pullman Company is to be entitled to collect from persons occupying the berths and receiving special accommodations in said cars, such sums of money as may be usual on other lines furnishing equal accommodations. It is to have the right to place for sale in such of the ticket offices of the railroad company as it may desire, tickets for berths, couches, etc.; such tickets to be sold by the agents of the railroad company, without charge to the Pullman Company.

The contract contains an option to the railroad company to provide three-fourths, or less, of the capital required for furnishing the equipments of said cars, at any time within five years from the date of the contract, and, thereupon, to become a joint owner with the Pullman Company in such equipment, and to receive a proportional amount of the gains, and bear a like proportion of the losses accruing to and sustained by the latter company. Another option given the railroad company is, that it may terminate the contract itself, in five, eight or eleven years, by purchasing the sleeping cars and equipments, at their actual cash value. There are other provisions and stipulations, but we deem the foregoing sufficient to show the relation existing between the contracting parties.

The sleeping cars, furnished under the contract mentioned in the complaint, passed daily into and through the county of Pueblo. Those operated in connection with the rolling stock of the Denver & Rio Grande Rail-

way were hauled from Denver, south to Pueblo, and from that point by different branches or extensions to Leadville, Durango and Antonito, passing through several counties in a single day, all said points being within this state. Those operated on the trains of the Atchison, Topeka & Santa Fe Railway pass daily through the county of Bent, and daily enter into and depart from the county of Pueblo. These trains pass over a continuous line of railway, extending from Kansas City, in the state of Missouri, through the state of Kansas, to the terminal point of said railroad in this state, Pueblo. The latter point is also one of the terminal points of the Denver & Rio Grande Railway. The Pullman Company, however, appears to have no principal place of business within this state.

The transcript does not disclose the fact whether the Pullman Company has filed in the office of the secretary of state a copy of its charter of incorporation, in compliance with the requirements of our statute, or not, but it does appear that no provision is made in its contract with the railroad companies for payment of state and county taxes upon said cars.

It further appears that said sleeping cars were operated under said contracts, on the lines of the Atchison, Topeka & Santa Fe railroads during the years from 1876 to 1881, inclusive; and upon the Denver & Rio Grande Railroad during the years 1880 and 1881. It further appears that during all said years no return was made or statement furnished to the state board of equalization, either by the railroad companies or by the Pullman Company, of the number and value of said sleeping cars, as required by the revenue laws of the state; also, that no assessment was made thereof by said board for the years aforesaid. The property having been omitted from taxation, the revenue officials of Pueblo county assessed and taxed the same for the years aforesaid, and are now

seeking by this proceeding to collect such taxes from the defendant in error.

The important points properly presented for decision upon this record are, whether property of this character, and so circumstanced, is subject to taxation under our statutes, and if it is, whether the authority to make the assessment exists in the county officials under any circumstances, or solely in the state board of equalization.

The principal points urged in favor of the affirmance of the judgment are, that the Pullman Company cannot be held liable for these taxes, for, having neither home office nor a principal place of business within the state, the property has no *situs* for taxation; but that if the property is subject to taxation at all, it can only be legally assessed against the railroad companies who control it under their contracts.

The constitution of this state, and the laws passed in pursuance thereof, subject all property, real and personal, within the state to taxation that shall not be expressly exempted by law.   The property assessed by the officials of Pueblo county was personal property within the state, and it was not exempt by law.   Law writers say, in reference to personal property, that it matters not whether the owner be a private person or a corporation — a resident or a non-resident, or whether the property be permanently located within the state, or be merely employed therein, it is subject to taxation.   The conceded principles governing this subject are, that justice demands that all property in the state, not exempt by law, shall be subject to taxation; that no person or class of persons, whether natural or artificial, shall escape the burdens of supporting the government, and that corporations shall have no greater exemptions in the matter of taxation than are extended to every citizen of the state.

Articles of commerce in transition are exempt; but no

such articles or question is involved in this case. The nature or character of the articles involved in the present controversy, and the purposes for which they were employed by both contracting parties, bring them within that class of property mentioned in our statute as railroad *equipment* and *rolling stock.*

But it appears from the stipulation of facts that the real owner of this property is a non-resident corporation, and it does not appear that the owner has a home office or principal place of business within the state. It affirmatively appears that the property is in a constant state of transition, passing from point to point through the state, and some of it, as before stated, passing beyond the limits of the state. Under such circumstances, it has no more local existence in one county than in another, of those through which it passes.

Transitory personal property must have a *situs* for taxation or it is not subject to any jurisdiction. To hold otherwise would be to subject such property to the jurisdiction of every county wherein it chanced to be on the annual assessment day; and the law is well settled that no class of property can be subjected to such burdens. This would be carrying the power of taxation to the extent of destruction, an abuse not even to be presumed. *Ogilvie v. Crawford Co.* 2 McCrary, 148; *Carrier v. Gordon,* 21 Ohio St. 605; *Hoyt v. Commissioners,* 23 N. Y. 224.

The law is that the residence or principal place of business in the state of the owner, agent or other person legally interested in movable property is the *situs* of such property for the purpose of assessment and taxation, although it is liable to be in several different counties every day. See authorities *supra; State v. Severance,* 55 Mo. 379–388; *Walton v. Westwood,* 73 Ill. 125.

In view of these principles, and the facts set out in the agreed statement, no difficulty is met in determining the *situs* of the property under consideration. The railroad

companies have possession and control of the property, under contracts to continue, at their option, for a long term of years, and during which term they use these cars for the same purposes as they use their first-class passenger cars, and probably realize as much profit therefrom. This possession, control and community of interest which the railway companies have and exercise gives the sleeping cars the same *situs* under the statute applicable to this class of property as articles of the same class owned by the railroad corporations.

The question of *situs* being disposed of, we will examine the question of jurisdiction to assess and tax this property. Section 10 of article X of the state constitution provides as follows: " All corporations in this state, or doing business therein, shall be subject to taxation for state, county, school, municipal and other purposes on the real and personal property owned or used by them within the territorial limits of the authority levying the tax." Section 3 of the same article requires the passage of general laws prescribing such regulations as shall secure a just valuation for taxation of all property, real and personal.

The legislature complied with the mandate of section 3, so far as railroad property is concerned, by the enactment of section 2251, General Laws of 1877. This section provides for the assessment and taxation of all the property, real and personal, "owned," "belonging to," and "used" by railroad corporations in the operation of their roads in this state. The railroad officials are required to make full returns of all such property; regulations are prescribed for its valuation and taxation, and the powers and duties of the revenue officials, state and county, with respect to this class of property, are distinctly defined. This section was evidently intended to cover the entire subject of the taxation of railroad property, and to leave nothing used by these corporations out of the list of taxable property, regardless of the condition of the title, and

whether the line of railroad lay wholly within the state, or partly within and partly beyond its limits.

The legislative power to pass such a statute is unquestionable. Cooley on Taxation, p. 34; Pierce on Railroads, 472–3; State Railroad Tax Cases, 92 U. S. 375. In the words of Chief Justice Marshall, in *McCullough v. State of Maryland*, 4 Wheat. *429, all subjects over which the sovereign power of a state extends are objects of taxation.

Notwithstanding the positive language of section 2251, that every kind of property used in the operation of a railroad shall be assessed for taxation, it is argued on the part of plaintiff in error that the provisions of this section reach only the property actually *owned* by the railroad companies, and that property owned by other parties, although exclusively used in the operation of a railway, is subject to taxation like other property, where located or found, or at the place of its legal *situs*, and by the revenue officials of such locality.

This proposition is advanced in support of the jurisdiction assumed by the county officials of Pueblo county to assess the sleeping cars mentioned in the record. We are, therefore, called upon to define the respective jurisdictions of the county and state officials with respect to this class of property, which necessarily involves a construction of that portion of the section relating to the returns required to be made by the railroad officials to the state board of equalization.

It must be borne in mind that the imposition of a tax is a legislative act, and unless authority is so given, it does not exist; also that the property to be taxed, as well as the mode of taxation, is subject to legislative control. Cooley on Taxation, p. 244; Pierce on Railroads, p. 81.

A well settled rule of statutory construction is, that the intent of the legislature, if it can be ascertained, is to govern whenever doubts arise as to the meaning of words employed. Chief among the considerations to be weighed

in the construction of a statute are the objects to be accomplished, the evils to be remedied, and the circumstances under which it was enacted. This rule is applicable to the construction of revenue laws. Special consideration has often to be given to the purposes to be effected, in order to correctly interpret laws of this character. Cooley on Taxation, pp. 198–9.

The purposes sought to be accomplished by this statute are apparent upon its face. They were to subject to taxation, by a mode convenient and equitable to all concerned, the entire property employed by railway corporations in this state. A disposition is manifested in the regulations prescribed, that no portion of the property so employed shall escape the burdens of taxation; that there shall be a just valuation of all articles, and that every division of the state entitled, shall receive a *pro rata* distribution of the revenues thus arising. This being the plain intent of the statute, a technical construction of an occasional word or phrase, which, if allowed, would tend to defeat the object, cannot be permitted. 1 Desty on Taxation, p. 102. Another consideration to be borne in mind is, that the legislature has set off into a distinct class the property employed by these railway corporations, and the regulations prescribed for its valuation and taxation are exclusive of all others. The other sections of the statutes cited by counsel, relating to local assessments of personal property, have no reference to any personal property employed as portion of the equipment of a railroad. *R. R. Co. v. Washington County,* 30 Gratt. 481.

We come now to the question of the respective jurisdictions of the county and state authorities.

As we construe section 2251, the county officials are authorized to assess the real estate of these corporations, together with the improvements thereon, "not including any portion of the road itself," situated in their respective counties, and they are likewise authorized to levy taxes

upon their *pro rata* distribution of the entire assessment of the remainder of the property owned and used by the railways, the jurisdiction to *assess* which is conferred upon the state board of equalization. The entire road within the state, with all the rolling stock and personal property of every kind entering into its equipment, is to be assessed as a *whole*, and this is to be done by the state board. They are to value the road at a uniform rate per mile of main track, and add to the value of each mile a *pro rata* distribution of the whole valuation of the rolling stock and other personalty. On or before the 15th day of April in each year the board is required to transmit a statement to the county clerk of each county through which a railroad may run, showing the length of the main track in the county, and the assessed value per mile as fixed by the *pro rata* distribution per mile of all the property so assessed by the board. Upon this statement being transmitted, showing the proportion of such entire assessment to which each county is entitled, the county officials act, and levy taxes upon their *pro rata* distributions thereof. The legality as well as the advantages of this mode of assessment is recognized by numerous authorities. State Railroad Tax Cases, *supra; Applegate v. Ernst*, 3 Bush, 648; *Gulf R. R. Co. v. Morris*, 7 Kans. 210.

We next come to the objection that the sleeping cars giving rise to this controversy are not required to be included on this entire assessment to be made by the state board, because, as alleged, it is only the property *owned* by the railroads which their officials are required to return for assessment; hence, the jurisdiction of the board is confined to the property to be included in this statement. All other property, therefore, would be subject to *local* assessment under *other* statutory provisions.

We have already expressed the opinion that the mode of assessment prescribed by this section is exclusive of

any other. It remains to consider the correctness of the allegation respecting the *return*.

We observe, first, that the articles in question comprise part of the rolling stock employed in the operation of these roads. Secondly, that all the rolling stock and other property so employed is to be assessed under the provisions of this section, and that the value of every article is to enter into the aggregate assessment to be *pro rated* to the several counties. Thirdly, that no jurisdiction is conferred by the section upon the county officials to assess property of this description; and fourthly, that no other return to the board is provided for, save that by the railroad officials. The foregoing propositions are all sustained by the plain phraseology of the section.

That the assessment is to be as comprehensive as stated is shown by the assessment clause, which is in the following words: " The said property shall be valued at its full cash value, and assessments shall be made upon the entire railway within this state, and shall include the right of way, road-bed, bridges, culverts, rolling stock, depots, station grounds, buildings and all other property, real and personal, exclusively used in the operation of such railway."

It is made the duty of the state board to make the entire assessment, save the real estate, other than the road itself. Following the assessment clause above quoted, the further duties of the board respecting the *pro rata* distribution among the counties interested, for taxation of their respective proportions, are stated as above mentioned.

Now, the only officers or persons mentioned in the section upon whom is enjoined the duty of making returns to this board, concerning the rolling stock and personal property aforesaid, are "the president, vice-president, general superintendent, auditor, or other general officer of any corporation operating any railway in this state."

And no returns of personal property are required to be made to any other jurisdiction than the state board.   To so construe the statute as to excuse the railway corporations from returning to this board the entire rolling stock employed by them, because a portion of the articles were operated under contract, and not, in fact, owned by these corporations, would not only be inconsistent with the evident intention of the legislature, but tend to defeat it. The officers of the railroad companies possess the requisite information to make complete returns of every article used.   They are familiar with every article comprising the equipment of their respective roads, and while some or all of such articles may, in fact, be owned by one or more non-resident persons or corporations, the statute very plainly makes it the duty of the railway officials to report the whole to the state board for taxation, and as plainly excludes the idea of depending for returns on parties not connected with the management of the roads. This shows the legislative design to confer exclusive jurisdiction for the assessment of the property under consideration on the state board, and at the same time, the want of jurisdiction in the county authorities.   *R. R. Co. v. Washington Co.* 30 Gratt. 481.

Executive and ministerial officers enforce the tax laws, but in so doing they must keep strictly within the authority those laws confer.   They neither have, nor can have, any " roving commission to levy and collect taxes from the people without authority of law, but can only do so in the manner prescribed by the law."   *Barlow v. The Ordinary,* 47 Ga. 642.

We have not considered the question whether or not a liability to *pay* taxes on these sleepers exists against the railroad companies using them.   That question is not properly before us, and neither of the railway companies interested in the question is a party to this controversy. But a construction of the provision relating to the *return of property* to be made by the railway officials is involved

in the question of the jurisdiction of the county authorities to assess the taxes sued for, and has been necessarily passed upon.

Our conclusion on this branch of the case is, that the statute imposes on the railway officials the duty of reporting to the state board all personal property employed by them in the operation of their roads, without regard to the question of ownership.

The suggestion that the statute only requires return "of the rolling stock in use on the corporation's line which is *necessary* for the transportation of the freight and passengers," and that sleeping cars being in the nature of a luxury, and not a necessity, may be excluded, has no force whatever. It is reasonable to conclude that all the rolling stock used by a railroad company in the operation of a railroad is necessary for that purpose.

The views expressed and conclusions announced are decisive of this controversy. They show that the county authorities exceeded their jurisdiction in assessing and levying the taxes sought to be recovered, and that the judgment of the district court was correct. It will accordingly be affirmed.

*Affirmed.*