PEOPLE EX REL. IRON SILVER MIN. CO. ET AL. V. HENDERSON, TREASURER.

1. MINES AND MINING — TAXATION — CONSTITUTIONAL LAW.— An act framed in the interest of the public revenue and in the exercise of the taxing power can only be challenged upon the most clear and convincing grounds.

2. All mining property is by statute subjected to taxation. For the purpose of assessment it is divided in two classes: *First,* mines producing annually upwards of $1,000; *second,* non-producing claims, including those that produce something, but less than $1,000.

3. Mines belonging to the first class are to be valued according to the peculiar method specified by statute in relation thereto. Mines of the second class are to be assessed in the manner provided for the assessment of other taxable realty.

4. The constitution exempted mining property (except net proceeds and surface improvements) from taxation for ten years. After that period it vests in the legislature discretionary power to tax or continue the exemption.

5. The constitutional provision relating to uniformity of taxation upon the same classes of subjects applies to mines and mining claims as well as to other kinds of property.

6. But if the regulations provided by statute do not produce gross inequality and injustice in the assessments of different parcels of property *belonging to the same class* the courts will not interfere.

7. The statutory provision relating to the assessment of contiguous claims refers exclusively to contiguous producing claims of the same owner.

8. When part only of the taxes levied is illegal, and the complaint fails to aver a tender of the legal portion thereof, it is defective, and injunction proceedings against the whole levy must fail.

*Error to District Court of Lake County.*

BY the constitution of this state, mines and mining claims bearing precious metals, except the net proceeds

and surface improvements, were exempted from taxation until the year 1886. At the session of the legislature following, viz., in 1887, a law was adopted providing for the taxation of such mines. In pursuance of this act mining property in Lake county, including that belonging to the Iron Silver Company, was duly assessed and taxes levied thereon. Thereupon an action was brought in the name of the people at the relation of the said company for the purpose of enjoining the collection of such tax, upon the ground, principally, that the legislative act mentioned is unconstitutional. Defendant answered the complaint, and upon the complaint and answer, and certain evidence offered by the parties, a decree was rendered in the court below dismissing the action. To reverse that decree the present writ of error was sued out.

The provisions of the statute necessary to a complete understanding of the opinion are sections 1, 3 and 4, found on pages 340 and 341, Session Laws of 1887, to wit: "Section 1. All mines and mining property of the class heretofore exempted by the constitution of the state of Colorado shall hereafter be assessed and taxed, and the taxes levied enforced by sale of the property taxed, in default of payment, in the same manner as is now or may be provided by law in the case of other classes of taxable real estate."

"Sec. 3. All mines and mining claims, and possessory rights therein, producing mineral during the year exceeding in value the sum of one thousand dollars ($1,000), shall be assessed by the assessor, for the purposes of taxation and revenue, as follows, viz.: The assessor shall compute and ascertain the gross proceeds in dollars and cents derived from the mine and mining claim, to be valued during the preceding fiscal year. Such mine or mining claim shall be valued for revenue purposes at a sum not exceeding one-fifth of the sum thus ascertained, and said mine or mining claim shall be assessed and taxed accordingly; and if such gross proceeds are derived

from a group of several mines or mining claims contiguous to each other, owned or held by the same person, company or corporation, then such ascertained sum shall be equally divided among and prorated to each of such claims, and they shall be valued and taxed accordingly."

"Sec. 4. In case the mine or mining claim shall not be patented or entered for a patent, but shall be assessable and taxable under this act on account of producing gross proceeds, then and in that case the possession shall be the subject of the assessment; and if said mining property be sold for taxes levied, the sale for such taxes shall pass the title and right of possession to the purchaser under the laws of Colorado."

The remaining essential facts sufficiently appear in the opinion.

Messrs. L. S. Dixon and F. W. Owers, for plaintiffs in error.

D. E. Parks, county attorney, and Mr. H. B. Johnson, for defendant in error.

Chief Justice Helm delivered the opinion of the court.

In approaching the consideration of this case we remember that the act challenged is framed in the interest of the public revenue; that to a limited extent it is an exercise of the taxing power, and that, therefore, only upon the most clear and convincing grounds should the court consider favorably objections thereto. We also bear in mind the familiar principles that, except as controlled by constitutional limitation, the authority of a state legislature in enacting laws is plenary, and that, unless there be a clear and positive repugnancy between a statute and the constitution, the statute must be upheld.

Section 1 of the act before us contains an express legislative declaration that, after the adoption thereof, mines

and mining claims bearing precious metals shall be taxed for revenue. All such property, regardless of its tenure,— that is, whether held under patent, application for patent, or mining location, and regardless of the question as to whether the value thereof be much or little,— is clearly and unequivocally subjected to taxation.

In effect, sections 1 and 3 of the act, taken together, divide this species of property into two classes, viz.: *First*, the mines or mining claims referred to in section 3, *i. e.*, those which during the preceding fiscal year have had a gross output aggregating upwards of $1,000 in value; and *second*, all the remaining or non-producing claims, without reference to value. For reasons satisfactory to the legislative mind, mines yielding something, but less than $1,000, are included among the non-producers. As to the first class a specific method for determining valuations in relation to mines belonging thereto is pointed out, but as to the second class no rule for assessment is expressly provided. In the absence of such express provision, however, we must assume that the legislature intended to have mines and mining claims belonging to this class assessed in the manner specified by statute for the assessment of other real estate. The output of less than $1,000 therefrom, if any such there be, may become an element in estimating the valuation, and hence it is not correct to assume that such output necessarily escapes taxation. The latter part of the first section does not refer to the procedure for assessing or levying taxes. It simply provides that when the taxes assessed and levied upon this kind of property shall not be paid, the payment or collection thereof shall be enforced by sale in the same manner as the payment of delinquent taxes upon other kinds of realty.

Therefore, by the act in question, we are advised: *First*, that all mines and mining claims containing precious metals are subjected to taxation; *second*, that this species of property is divided into two classes, viz., those

mines producing upwards of $1,000 during the fiscal year preceding, and those producing less than that sum or nothing at all; and *third,* that a specific method is provided for the valuation of mines belonging to the first class, while all mines and claims included in the second class are to be assessed in the manner indicated by law for the assessment of other taxable real estate.

Section 4 is somewhat ambiguous, but its evident purpose is to pass the title where possessory mining interests are sold for taxes; and, considered in connection with the remaining sections, we do not think it seriously affects either of the foregoing conclusions.

Counsel for plaintiff in error strenuously contend that this statute is obnoxious to certain provisions contained in article 10 of the constitution, and especially to section 3 thereof. Section 6 of said article reads: "All laws exempting from taxation property other than that hereinbefore mentioned shall be void." The only exemption of mines and mining property allowed by the constitution is contained in said section 3. This section first declares that "all taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws which shall prescribe such regulations as shall secure a just valuation for taxation of all property, real and personal." It then proceeds with the following proviso: "Provided, that mines and mining claims bearing gold, silver and other precious metals (except the net proceeds and surface improvements thereof) shall be exempt from taxation for the period of ten years from the date of the adoption of this constitution, and thereafter may be taxed as provided by law." * * *

Giving the foregoing proviso a construction in accordance with its clear and reasonable purport, we are of the opinion that the word "may" in the latter part thereof does not mean "shall." That is to say, in our judgment, the proviso operates: *First,* to exempt the property men-

tioned wholly from taxation for the period of ten years, beginning with the date of the adoption of the constitution; and *second*, to vest in the legislature a discretionary power to say whether, after the expiration of this period, it shall be subjected to taxation, or whether the exemption shall be continued. This construction is reinforced by an examination of the circumstances under which the constitution was adopted, and the history of the specific provision while pending before the constitutional convention, as well as by other considerations which we shall not pause to mention.

The effect of a proviso is to withdraw the subject-matter thereof from the purview of the section containing it. And it is asserted by counsel, with some plausibility, that since this kind of property, if taxed at all after the expiration of the ten years specified, is to be "taxed as provided by law," the intention was to leave the legislature wholly untrammeled by the preceding requirements of section 3, relating to uniformity and just valuations; but, in our judgment, the expression "as provided by law" was simply intended to expressly authorize regulations for violation and assessment peculiar to mining property. As we have seen, the imperative operation of the proviso is only temporary. And when the legislature in its wisdom elects to tax this species of property, we think the first clause of the section should become operative. So far as possible there should then be just valuations and a reasonable uniformity in distributing the burden of taxation, as between different mines and mining claims belonging to the same class. The principal design of this constitutional provision is to subject all taxable property to the payment of its fair and equitable proportion of the revenue necessary for governmental purposes; and if there were doubt as to the meaning of a particular word or phrase made use of therein, such doubt should be so resolved as to most effectively accomplish this beneficent purpose.

From the language employed the following further conclusions may be fairly deduced, viz.: *First,* that the division of property into separate and distinct classes of subjects is authorized. The phrase used, " the same class of subjects," puts this beyond question. The necessity for such a division is obvious, and the great purpose of the provision could hardly be accomplished without it. *Coal Co. v. Com.* 79 Pa. St. 100; *Kentucky Railroad Tax Cases,* 115 U. S. 321; *State Board v. Railroad Co.* 48 N. J. Law, 146. To justify judicial interference, the classification adopted must be based upon an invidious and unreasonable distinction or difference with reference to similar kinds of property. *Manufacturing Co. v. Wright,* 33 Fed. Rep. 121; *People v. McCreery,* 34 Cal. 432. *Second,* that the uniformity required is a uniformity of taxes, not a uniformity of procedure, or of rules or regulations to govern the levy thereof. To demand absolute uniformity in the latter regard would tend strongly to defeat the prior and supreme requirement. The constitution leaves this matter with the legislature, simply directing that the regulations shall be made by general law, and shall secure just valuations. It is hardly necessary to dwell upon the vital importance of having different rules for the assessment of railroad rolling stock, or the net output of mines and other kinds of personalty, or of producing mines and other realty, etc. The legality as well as the advantage of different modes of assessing different kinds of property have already been recognized by this court. *Stanley v. Little Pittsburg Co.* 6 Colo. 415; *Carlisle v. Car Co.* 8 Colo. 320.

It is important to bear in mind the distinctions just mentioned, because confusion in examining authorities may thus be avoided. The constitutional mandates or inhibitions on the subject are not all alike. In fact, the language now under consideration is not a literal transcript of any other existing constitutional provision.

If the rules or regulations provided by statute are not

clearly calculated to produce gross inequality and injustice in the assessment of different parcels of property belonging to the same class, the courts will not interfere. *City v. Mining Co.* 2 Nev. 86; *Railroad Co. v. McCarty,* 25 Ind. 180; *People v. McCreery, supra.* And if the same method is applied without discrimination throughout the state to the valuation of all property included in a particular class, the requirement of the constitution is sufficiently complied with.   Upon this subject Mr. Justice Matthews, delivering the opinion in the *Kentucky Railroad Tax Cases, supra,* says: "The rule of equality in respect to the subject only requires the same means and methods to be applied impartially to all the constituents of each class, so that the law shall operate equally and uniformly upon all persons in similar circumstances." Of course instances of injustice and hardship will sometimes result under the statute before us; but this is necessarily true of all statutes providing methods for the assessment and taxation of property.   Exact uniformity and mathematical accuracy in valuations are absolutely impossible.   Nothing that can be devised by human reason will secure such exactness or accuracy.   To use the expressive words of Mr. Justice Miller in *State Railroad Tax Cases,* 92 U. S. 575, "perfect equality and perfect uniformity of taxation as regards individuals or corporations or the different classes of property subject to taxation is a dream unrealized."   And if the constitutional requirement as to equality and uniformity of taxation imperatively commanded absolute exactness, in the language of Judge Cooley, "the operations of the government must come to a stop."   Cooley, Tax'n, 124.

For an able collection and review of cases more or less pertinent to the foregoing inquiry, see *Railroad Co. v. Taylor Co.* 52 Wis. 37.   But by this citation we must not be understood as indorsing to its fullest extent the broad conclusion reached in the principal opinion.

We do not discover in the act before us any such ob-

jection, either to the classification adopted or to the rules and regulations made applicable, as would justify judicial interference. Difficulty will sometimes be encountered in determining the value of non-producing mines; but no convincing reason is given showing that such mines may not, with reasonable fairness and equity, be assessed for taxation in the manner provided for the assessment of other real estate. The procedure adopted for reaching proper valuations of producing mines is not perfect, and in time experience may suggest something better, but it is not at present apparent that oppressive unfairness or inequality will result. In connection with the assessment of this kind of property, peculiar difficulties must always exist. The mining and reduction of ores are usually attended with great expense and trouble. In some instances one-fifth of the gross output will represent more, and in other instances less, than the real net profit. But this is not intended to be a tax upon the net profit. It is a tax upon the supposed value of the property itself; the proportion of the gross output selected being simply a basis or guide provided by the legislature in approximating such value. These suggestions only serve to illustrate the propriety of classifying producing mines by themselves, and applying thereto special rules for ascertaining values.

It is true, as counsel assert, that parties who have large bodies of valuable ore in sight may evade the statute by taking out only enough to secure a valuation based upon $1,000 worth of mineral, rather than submit to an assessment resting upon the estimated value of the property with ore disclosed; but, as is suggested in response by counsel on the other side, similar evasions are possible under all rules for assessment and taxation. Besides, objections based upon the supposition that mine owners will act contrary to their own interest obviously have but little force. If the ore in sight be not taken out one year, it remains to be extracted and become the basis of

valuation the next; and the mine owner will not keep his property idle simply in order to escape taxation, when the annual interest on his output would pay the taxes several times over.

The objection that the provision relating to contiguous claims allows the application to non-producing mines of two different rules of valuation, and is therefore in conflict with one of the principles we have stated above, disappears under a proper construction of the language employed. The section in which this provision occurs deals solely with mines and mining claims that have produced upwards of $1,000 during the preceding fiscal year; and the provision mentioned in our judgment refers exclusively to contiguous producing claims of the same owner. Where such claims are contiguous and are worked together it will often be difficult, if not impossible, to determine the exact proportion of the gross output from the entire workings yielded by each particular mine; and the intent of the legislature evidently was to relieve the assessor and owner from this embarrassment by providing that where each of the contiguous claims has contributed thereto the total gross output shall, for the purposes of taxation, be equally distributed over the entire group.

The foregoing discussion answers all of the specific constitutional objections presented, and we neither suggest nor decide anything more.

We shall not here determine whether in the case at bar the addition for improvements to the schedule or assessment roll by the county commissioners of $40,000 was illegal. This action was not brought to enjoin the county treasurer from collecting merely the tax assessed upon the sum thus added. It was instituted by the complaining company as relator for the purpose of enjoining the collection of the total tax based upon the valuation of the entire property. The proposition that, admitting the act to be constitutional, the entire levy is rendered

excessive by the addition thereto of the sum mentioned, the aggregate being more than one-fifth of the total gross output, does not, under the pleadings, furnish ground for injunctive relief. No averment is made or proof offered showing a tender of any portion of the tax levied; yet, without such tender sufficient to cover the tax based upon one-fifth of the gross output, the complaint is insufficient. *Johnson v. Roberts*, 102 Ill. 655. Discovering no error, the judgment of the district court is affirmed.

*Affirmed.*