DETERMINED IN THE

# SUPREME COURT

OF THE

## STATE OF COLORADO.

SEPTEMBER TERM, 1891.

DENVER & RIO GRANDE RAILWAY COMPANY v. CHURCH, TREASURER, ETC.

1. RIGHT OF STATE TO TAX ALL PERSONAL PROPERTY.—A state has the right to tax any personal property found within its jurisdiction without regard to the place of the owner's domicile.
2. TAXATION OF RAILWAY CARS.—Sec. 8, art. 1, of the federal constitution, which confers power upon congress to regulate commerce among the several states does not inhibit the taxation by a state of railway cars found within its borders, though in the transaction of business they pass into adjoining states and territories.
3. CORPORATIONS TAXED FOR PROPERTY USED.—By sec. 10, art. 10, of the state constitution, corporations using personal property in carrying on their business are declared subject to taxation thereon, though such use be not united with the ownership.
4. RAILWAY OFFICIALS REQUIRED TO REPORT PROPERTY FOR TAXATION.—As the law stood without the amendment of 1889, the proper railway official was required to report to the state board of equalization for taxation all rolling stock owned or operated by the company. And this board was directed to assess against each railway company all property exclusively used in operating the railroad.
5. PROPERTY NOT USED IN OPERATING RAILROADS NOT ASSESSABLE.—The state board of equalization cannot assess for taxation any personal property owned or controlled by railway companies which is

VOL. XVII.—1                                    (1)

not used in the direct *operation* of the respective railroads, even though such property may be employed indirectly in carrying on the business.

6. CONSTRUCTION OF PHRASE " EXCLUSIVELY USED." — The phrase " exclusively used " in sec. 2, p. 322, S. L. 1885, does not limit the action of the state board to such rolling stock as always remains upon the company's lines and under its immediate control. The authority of the board includes cars which in performing their regular journeys pass out of the state and become temporarily useful in operating other railroads.

7. LIABILITY OF DOMESTIC CORPORATION USING PROPERTY OF FOREIGN CORPORATION.—A domestic railway corporation using and operating cars may be required to pay the taxes thereon, though the exclusive ownership be in a foreign corporation with its domicile, principal office and principal place of business in another state.

### Original Proceeding for Injunctive Relief.

THIS case is presented upon an agreed statement of facts. The plaintiff company had in its possession and was operating along the line of its road, a number of Pullman sleeping cars, which under the control of a connecting line frequently passed into the adjoining territory of Utah. These cars were not reported for taxation by the proper official with the other rolling stock. The state board of equalization proceeded nevertheless to assess them and hold the railway company liable for the taxes thereon. In pursuance of this action, taxes were duly levied and defendant Church as treasurer of Arapahoe county was taking steps to collect the same. The opinion, it is believed, sufficiently states all other necessary facts.

Messrs. WOLCOTT & VAILE and Mr. H. F. MAY, for plaintiff.

Mr. ALVIN MARSH, and Mr. J. H. MAUPIN, Attorney General, for defendant.

CHIEF JUSTICE HELM delivered the opinion of the court.

When the arguments in this case were originally filed,

two questions were presented for adjudication. The first and more serious of these questions involved the constitutional right of the state to levy any tax upon Pullman sleepers. It was stipulated that the cars assessed were the "sole and exclusive" property of a corporation organized and having its principal place of business in the state of Illinois. And counsel for plaintiff contends that since they convey passengers from state to state, they are merely vehicles employed in interstate commerce and hence are not subject to local taxation. The proposition is advanced that the attempt of the state to levy these taxes was a violation of the provision of the federal constitution investing congress with the power " to regulate commerce * * * among the several states * * * ." Art. 1, sec. 8.

Recently, the above question has been squarely determined by the supreme court of the United States. That court employs the following language : " The fact that, instead of stopping at the state boundary, they (Pullman cars) cross that boundary in going out and coming back, cannot affect the power of the state to levy a tax upon them. The state having the right for the purposes of taxation to tax any personal property found within its jurisdiction, without regard to the place of the owner's domicile, could tax the specific cars which at a given moment were within its borders." *Pullman Palace Car Co. v. Commonwealth of Penn.*, 11 Sup. Ct. Rep. 876 (146 U. S. 18).

The foregoing decision was not unanimous; three of the judges united in a dissenting opinion, and one judge did not participate. The dissenting opinion sanctions the view urged upon us by counsel. It concedes that the non-residence of the owner is not at all decisive against the right to tax; but it holds that in this regard there is a broad distinction between property which is permanently located in one state for ordinary use and sale, and property such as that now under consideration, which is merely an appliance used in the transportation of interstate commerce. Incidentally, it is said in this opinion : " But the ships that traverse the sea,

and the cars that traverse the land in those lines (steamship lines and continental railways) being the vehicles of commerce, interstate or foreign, and intended for its movement from one state or country to another, and having no fixed or permanent *situs*, or home except at the residence of the owner, cannot, without an invasion of the powers and duties of the federal government, be subjected to the burdens of taxation in the places where they only go or come in the transaction of their business, except where they belong."

. Both of these opinions are strong and persuasive; but of course we are bound to accept the view promulgated by a majority of the learned judges.

Assuming, therefore, that the cars assessed by the board of equalization are subject to taxation in this state, we turn to the remaining question submitted for consideration, viz.: Can such taxes be collected of the Denver & Rio Grande Railway Company, a domestic corporation, using and operating the cars; the sole and exclusive ownership thereof being, as already remarked, in a foreign corporation with its domicile, principal office and principal place of business in the state of Illinois?

The answer to this question must be found in the constitutional and statutory provisions regulating the subject of taxation. The case of *Pullman Car Co. v. Commonwealth*, *supra*, vindicates the right of the state of Pennsylvania to levy taxes against the Pullman company upon Pullman sleepers passing through that state. It does not, therefore, aid us in the branch of the present controversy now under consideration. In *Carlisle v. The Pullman Palace Car Co.*, 8 Colo. 320, to which our attention is invited, the liability of the railway company was expressly excluded from determination; hence that opinion can only assist us as its careful reasoning upon the general subject may point toward a correct conclusion. The undoubted tendency of this reasoning foreshadows the view that property *used*, as well as that owned, may be assessed against the railway using it.

The constitution, art. 10, sec. 10, reads as follows: "All

corporations in this state, or doing business therein, shall be subject to taxation for state, county, school, municipal, and other purposes, on the real and personal property owned *or used* by them within the territorial limits of the authority levying the tax." The framers of the constitution have thus expressed in unequivocal language their intention to subject corporations to the payment of taxes upon personal property *used* by them, even though such use be not united with the ownership. It is possible that this provision is not self-enforcing, and that standing alone its manifest purpose would fail for want of proper regulations touching the manner of assessing and collecting the taxes referred to. . But, as we shall presently see, it is unnecessary to speculate upon such a contingency.

Before passing to a consideration of the statutes relating to revenue, it is appropriate, though perhaps not necessary, to notice briefly the character of plaintiff's control over Pullman sleepers upon its line. Notwithstanding the express statement, among the stipulated facts, that these cars are the "sole and exclusive" property of another corporation, it is obvious from the remaining provisions of the stipulation itself, coupled with concessions made by counsel in argument, that plaintiff had an important and valuable interest therein. By virtue of a contract with the owner covering a period of fifteen years, these cars were under the control of plaintiff with an option in favor of plaintiff for the purchase thereof. They took the place upon plaintiff's trains of ordinary passenger coaches. For persons carried in them plaintiff collected the usual railroad fare ; the revenue thus received being several times the amount exacted by the owner (the Pullman company) for the additional luxury of sleeping accommodations. The Pullman company employed a car conductor and porter to preserve order, collect berth tickets or fares, and attend to the convenience and comfort of passengers. But the cars, like all the rest of the train, were subject to the control of the train conductor, and the Pullman employees were governed by the general railroad regulations.

In nearly all respects during the term of the contract, plaintiff's dominion over these sleepers was as complete and exclusive as if it had been the absolute owner.

Under a contract substantially similar, it was held in Illinois that the railway company possessed "such a qualified property" in the Pullman cars, "that for taxable purposes they may be regarded, within the fair meaning of the statute, as 'belonging' to the rolling stock" of the company, and subject to taxation as such. *Kennedy v. St. L. V. & T. H. Ry. Co.*, 62 Ills. 395. The condition of our legislation, however, obviates the necessity, were we disposed so to do, of adopting the Illinois theory regarding the qualified property or ownership of the railway company.

Had subdivision 7 of section 2, found on page 318, Session Laws of 1889, been in force when the assessment under consideration was made, the present controversy could not have arisen. For this provision places the legislative intent in the premises beyond a reasonable doubt. But while the statutes by which the present decision must be controlled are not so clear, we encounter no serious difficulty in discovering the legislative purpose.

By section 2, p. 322, Session Laws, 1885, "the president, auditor, general manager or other authorized agent of any corporation owning *or operating* any cars, rolling stock or any property whatsoever on any line of railroad in the state," is required to furnish the state board of equalization on or before April first of each year, with an affidavit specifying all such property "owned or *operated*" by the company, together with the value thereof. It is probable that through inadvertence reference to this provision was omitted in the succeeding section, which declares that the state board of equalization shall assess the property enumerated in the first section of the act in the manner provided by section 2847, (sec. 36, chap. 94,) Gen. Stats. The latter provision directs the board to assess against the railway company all personal property *exclusively used* in operating the road. Whether established rules of construction permit us to read

the statute as if it contained this reference, we shall not pause to consider. For if they do not, we must nevertheless turn to said section 2847 for the authority of the state board in the premises.

Section 2, above mentioned, clearly operates as an implied repeal of at least so much of said section 2847 as relates to a sworn report by railway officials touching railway rolling stock. Thus for the word "*owned*" in section 2847 were substituted, so far as rolling stock is concerned, in section 2 the phrases " owning or operating " and " owned or operated." By this change the legislature indicated its purpose to place all rolling stock used or operated by a railway company upon the same footing with reference to taxation, regardless of the interest, as lessee or owner, of the company operating it.

Hence the law, as it stood when the tax in controversy was levied, directed : *First*, that the proper railway official report to the state board of equalization all rolling stock " owned or operated " by the company ; and *second*, that this board assess against the railway company all property " exclusively used " in operating the railroad.

We cannot concede the correctness of the proposition that the phrase " exclusively used " as thus employed, applies to such rolling stock only as always remains upon the company's lines and under its immediate control. If this were true, it would follow that rolling stock *owned* by the company, which frequently passes over connecting lines, such as loaded freight cars, might escape taxation altogether. For under the provision directing the assessment by the board, coupled with the amendment of 1885, rolling stock owned is upon the same footing with rolling stock leased ; either must be " exclusively used." The word " exclusively " is a limitation upon the power of the state board of equalization. This specific tribunal was provided for the purpose of assessing railway property, real and personal, that cannot in the nature of things be intelligently and equitably reached with the ordinary taxing machinery. Such personal property as

is owned or controlled by railway companies and is not used in the direct *operation* of the roads cannot be assessed by the board. This is true even though the property may be so employed as to indirectly aid in carrying on the business. But it is unnecessary to further comment upon the affirmative legislative designs in the premises. It is sufficient for the present to declare that it was not the intent to exempt cars from taxation merely because in performing their regular journeys they sometimes pass out of the state and then become temporarily useful in operating other railroads.

Considering, therefore, the existing legislation as a whole, together with the clear and imperative constitutional declaration touching the subject, we are of the opinion that Pullman sleepers controlled and operated, though not owned, by plaintiff were properly assessed to it for taxation. Whether plaintiff may compel the Pullman company to refund the taxes thus paid, is a question we are not now called upon to decide.

It appears from the agreed statement that the cars in question were employed one third of the time outside the state. In view of all the facts before us, we may fairly assume that the board of equalization took this circumstance into consideration and assessed the cars at two thirds of their actual value. Apportionments dissimilar in form but calculated to accomplish similar equitable results deserve commendation and have received judicial approval. *Pullman P. C. Co. v. Commonwealth, supra.*

The application for an injunction is accordingly denied.

*Application denied.*