## Alamo M. Co. et al. v. Board of Co. Com'rs of Teller Co.

*District Court of Teller County, May 23, 1901.*

Wolcott and Vaile for plaintiffs; J. M. Brinsom, County Attorney, and Thomas, Bryant and Lee for defendant.

SEEDS, J., delivered the opinion of the court.

The above entitled actions are pending in this court upon separate appeals taken by the respective petitioners from the decision and order made by the board of county commissioners of Teller county, denying the petitions filed by them for the reduction of assessments made on a number of non-producing mining claims for the year of 1900. Not only do the above entitled cases all involve the same questions of law, so that they may be considered together but by stipulation of the parties in interest, the final adjustment of the tax assessment for the year 1900 on some mines or other mining properties in the same district, of the aggregate assessed value of —— is to be adjusted in accordance with the final decision in these cases. It is apparent, therefore, that the decision of these cases is of very vital importance to Teller county, on the one hand, and to the large number of taxpayers on the other. For this reason, as well as because of the difficulty in arriving at a satisfactory conclusion in regard to some of the questions involved I have examined all of these questions with unusual care; and, in doing so, I have had the assistance of eminent counsel on both sides of the case.

The main contention of the learned counsel representing appellants is, that mining claims which are unproductive cannot, under the law, be valued for the purposes of taxation at a higher figure than the lower producing mine in the same vicinity similarly situated. Under the law in

force at the time the assessments were made a mine producing mineral during the year of a value exceeding $1,000, say $1,001, could not be taxed at a valuation exceeding one-fifth of the gross output, or $200. In the cases before the court most of the properties, though unproductive have been assessed at a figure many times that stated as the minimum assessable valuation on producing property; so that if the contention referred to shall prevail the taxes on all non-producing mining property in the district would have to be reduced to a small fraction of that fixed by the assessor.

In support of this claim it is asserted on behalf of appellants:

1. The assessment as made is unjust and erroneous, as it lays an unequal burden on different pieces of property of the same class within the meaning of Colo. Const. Art. 10 § 3, which provides, that, "All taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax."

It is ably contended that this provision of the constitution prohibits the taxing authorities in one county from placing a valuation (2 Mills Ann. Stat. § 3839) upon property which is higher than that fixed upon similar properties in other counties, because as the state revenue is levied by the general assembly the uniformity referred to must prevail through the state. In answer to this it is claimed on behalf of the county that the general assembly does not levy the state tax, but only directs the levy to be made by the several counties and that uniformity within the several counties is all that is aimed at by the provision quoted.

No evidence was introduced at the trial except the stipulations in which the facts are admitted, subject to their relevancy and materiality; and one of these admitted facts is that the assessors of other counties in the state value mining property for taxation at figures rang-

ing from $5 to $150 per acre, the highest figures being considerable lower than the average of those attacked in this case. I am inclined to believe that the uniformity required by the provision quoted is a uniformity within the state, as well as within the several counties, and that if the taxing authorities of one county should wrongfully or arbitrarily levy taxes within that county which are manifestly disproportionate to those levied in other counties, it would become the duty of the court to correct the inequality. But when we come to examine the assessments made on unproductive mineral land in other counties of the state, we find that they vary so greatly as to furnish no rule for the guidance of the court in this case. The court will take judicial notice of the fact that the intrinsic value of a similar acreage of mining property in one mining district may be worth many times more than the same acreage in another, although the surface conditions of the two properties may be very similar. The court will also take notice of the fact that this district, being more productive than any other in the state, would be likely to give unproductive property contained in it a higher salable value than if the camp were but slightly productive. There is not enough in the various letters produced from assessors of other counties to show a lack of the uniformity required, as between those counties and this one, when allowance is made for the varying conditions referred to.

2. Counsel for appellants further contend that the mere fact that an unproductive mining claim is assessed at a higher rate than productive property in the same locality is conclusive proof of an unjust and unequal valuation, and that for purposes of taxation unproductive mining ground can only be assessed as agricultural or grazing lands, without considering the minerals contained, or that may be contained in them, and cites section 1 of the act of 1887 (2 Mills Ann. St. § 3222) in support of this

claim. That section reads as follows:

"All mines and mining property of the class heretofore exempted by the constitution of the state of Colorado, shall hereafter be assessed and taxed, and the taxes levied enforced by the sale of the property taxed, in default of payment, in the same manner as is now or may be provided by law, in the case of other classes of taxable real estate."

I do not agree with this contention of learned counsel. That section only requires that taxes be levied on such ground in the same manner as in the case of other classes of real estate, and in the Henderson case, hereinafter cited, it is held that the latter part of this section relates to the method of taxing and not to the value to be placed on the ground. Any assessment of property for taxes would be manifestly unjust which did not take into consideration the use to which that property could be put, as well as its market value; and the mere fact that no mineral has been shipped during a given year from a tract of ground immediately adjacent to a heavy producer is not proof that the former does not contain mineral. True, its contiguity to a valuable mine is not conclusive that it does contain a similar value of minerals. It is the duty of the assessor to fix the value, and in doing so he should be guided by many things, no one of which is controlling. First—The mineral indications, if any. Second—Its proximity to producing mines and the value of these. Third—The market value of the property. Fourth —The assessment placed on similar property in the vicinity, as well as in other districts, if the latter can be ascertained. Fifth—The rate fixed by law for taxation of producing mines.

Had it been the intention of the legislature to limit the tax upon unproductive property to a figure as low as the lowest producing mine, I think the act of 1887 would have so provided. Upon the one hand it is urged that

the recent act containing a similar provision is evidence of a legislative interpretation of the former act along the line contended for by the appellants; upon the other hand, it is argued that if the recent act has any bearing upon the case it is to the opposite effect, and that an amendment was necessary to give it that construction. I think the latter view is the correct one. Were it not plain to me that the petition of the petitioners on this point is unsound, I would review the laws governing the assessment of "'other classes of taxable real estate,' as farm property, of city property, stone and coal lands, etc., as I think all of them contemplate that the elements I have referred to shall be taken into consideration in assessing for taxation. Indeed, it seems to me, that it would be a manifestly unjust and unequal assessment to value as grazing land property which is of insignificant value for that purpose, though of very great value for mining purposes.

3. But it is claimed on behalf of appellants that the state legislature providing for the taxation of producing mines does not make of these a special and distinct class of property within the meaning of the constitution, but only classifies them as to the means by which the tax is to be levied, and it is claimed that People ex rel. v. Henderson, 12 Colo. 369, supports this view. It is true the doctrine is there announced "that the uniformity required is a uniformity of taxes, not a uniformity of procedure or of sales or regulations to govern the levy thereof," but that case emphasizes the well known fact that only approximate uniformity is attainable at the best; that all systems of taxation are imperfect, and often prove oppressive in individual cases, and quotes with approval the language employed by Mr. Justice Miller, in the State Railroad tax cases, 92 U. S. 575: "Perfect equality and perfect uniformity of taxation as regards individuals or corporations or the different classes of property subject to taxation is a dream unrealized." It seems to me that

the act of 1887 divides into two separate classes the productive and non-productive mines, so that owners of the former cannot justly complain of their tax merely because they are higher in given instances than those on near by non-producing property, or higher than they could be on the same property if productive. It is true the classification is somewhat arbitrary, but some line of demarkation between producing and non-producing property must be fixed in order to tax the output of the former, and it is not easy to say that a better one, or one less likely to produce hardship in individual cases could have been selected. If the facts in this case showed that the unproductive property is taxed at a valuation above its intrinsic value, I would not hesitate to make the reduction; but such does not appear to be the case. Indeed, there is nothing in the agreed statement which shows what the actual value of the property is. If it plainly appeared that non-productive property is assessed at a value disproportionate to other real estate, as farming or ranch property and town property having a similar intrinsic value, I would see just cause for complaint, but this does not appear in the record. If there is unwisdom in so framing the tax laws that productive mines are made to bear less than their fair proportion of the general burden of taxation, it does not become the duty of the courts to extend the uniform exemption to another class of property. In the Henderson case this separate classification of mines and mining property is distinctly recognized and upheld. In the opinion Judge Helm uses the following language: "Therefore, by the act in question, we are advised—that this species of property is divided into two classes, viz., those mines producing upwards of $1,000 during the fiscal year preceding, and those producing less than that sum, or nothing at all."

4. Finally, it is urged with much force and plausibility that the provisions of 2 Mills Ann. St.§

control the judgment in this case in favor of the petitioners. That section reads as follows:

"Values. The board, or district court, in the consideration of such petition, shall be governed by the values fixed upon other assessable property similarly situated in such county for the purposes of taxation."

This section when examined alone and without reference to other legislation bearing upon the subject, would seem to warrant the interpretation claimed for it. It must be borne in mind, however, in construing this section, that it was enacted for the government of the board and the court in the adjustment of taxes on all kinds of property, both real and personal. Its provisions must be considered in the light of other legislation upon the taxation of particular classes of property, and when so considered we must not suppose that the general assembly intended to abrogate the classification of mining property previously established and upheld by the court, as explained above. We should rather suppose it was intended that this classification should be considered in the action of the board and of the court, and that they should be governed by the values fixed upon other assessable property similarly situated, and belonging to the same class as that under consideration. Again; as we have seen, the petitioners in this case have not brought themselves within the provisions of the act of 1889 relied upon. Section 1 of that act, page 25, (2 Mills Ann. St. § 3839) requires that the petitioners "shall describe the property claimed to be unjustly or erroneously assessed—its true cash value," etc.; but in this case, the true cash value is not stated. I think it will hardly be claimed that "the true cash value for purposes of taxation" is a compliance with this requirement, or that the values fixed in the petition are the true cash values of the properties described. Indeed, the agreed case before the court shows they are not the true cash values. It is admitted "that in no instance,

either in the causes at bar, or those dependent upon the result of this hearing did the assessed valuation exceed one-third of the actual value thereof as determined by the assessor." And it is also admitted that the assessor in making these valuations "made diligent inquiry concerning the location of said premises in relation to producing mines and mining properties and to claims having an ascertained and definite market value.

Upon this basis, tract A, belonging to the Moon-Anchor company, for example, comprising 13.02 acres, has an actual value of $19,530, yet the petition states its value for purposes of taxation to be only $135.

It is also admitted that the valuations made by the assessor were conscientiously and carefully made, and that, as between the various non-producing properties, they are fair and reasonable. The complaint being that they are too high as compared with producing mines. While such comparison is a proper one for the assessor and the court to take into consideration in connection with other facts in determining the assessable value of unproductive mining ground, it is not conclusive upon him nor the court.

As I cannot find from all that is before me that any of the petitioners have been unjustly or erroneously assessed, the petitions must be dismissed, with costs.

For the reasons above stated it will not be important to pass specifically upon the several objections to consideration of stipulated facts. I think the foregoing will sufficiently indicate what of them were considered by the court in deciding the case.