THE STATE *ex rel.* TILLERY, *Collector*, v. HANNIBAL & ST. JOSEPH RAILROAD COMPANY.

1. **Taxation:** BRIDGE: STATUTES. Under Revised Statutes, 1879, section 6901, a railroad bridge owned by the railroad company and constituting a part of the track is taxable only as a part of the road and not as a separate structure, notwithstanding it is used in part as a toll-bridge for the passage of teams, wagons and the like.

2. ——— : ——— : ——— : STATE BOARD OF EQUALIZATION. Unless a bridge comes within the bridge act, the state board of equalization has no power to assess it under that act.

*Cross-Appeals from Lafayette Circuit Court.*—HON. J. P. STROTHER, Judge.

REVERSED.

*Strong & Mosman* and *Warner, Dean & Hagerman* for defendant.

(1) The bridge in question was part of defendant's railroad. *Railroad v. Hall*, 91 U. S. 342; *Bridge Proprietors v. Hoboken Co.*, 1 Wall. 116; *Mohawk Bridge Co. v. Railroad*, 6 Paige; *Thompson v. Railroad*, 3 Sand. 625; *McRea v. Railroad*, 2 Jones, 186.

(2) The principal use of the bridge is its railroad use, and therefore, it is taxable as railroad property. *Railroad v. Supervisors*, 48 Wis. 666; *Anderson v. Railroad*, 117 Ill. 26. (3) Unless the bridge was such property as fell within the description of property which could be taxed locally, then it must be taxed as general railroad property. See *Railroad v. City of Davenport*, 51 Iowa.

*H. F. Simrall*, *D. C. Allen* and *J. L. Sheetz* for plaintiff.

(1) The state board of equalization, being composed of persons designated by the constitution of 1875 (sec. 18, art. 10) and the laws to assess and fix the value of the property in controversy and of all railroads and their property, their valuation is conclusive and final, and the courts cannot examine the mode of reasoning or basis adopted by them to ascertain the value of the bridge. Const. of Mo. 1875, sec. 18, art. 10; R. S., articles 8 and 9, chap. 145; *Ins. Co. v. Pollock*, 75 Ill. 292; *State R. R. Tax Cases*, 92 U. S. 575; Cooley on Tax. (1 Ed.) 291. (2) And what is true as to assessing and fixing of values is equally true as to every other act within the function of the state board, including the ascertainment of property subject to assessment and valuation, and apportionment. The jurisdiction of the state board, within its function, is not only exclusive but it is original. Neither the circuit, supreme, nor any other court or tribunal in Missouri has that jurisdiction or any part of it. The law invests the state board with power to assess and value toll-bridges, and, as a necessary incident of that power, the duty and power to find out what bridges are toll-bridges. No other tribunal has the power to find out what bridges are toll-bridges or to assess them. To permit an inquiry as to the values fixed by the state board, or other matters decided by it within its functions, would be not

only contrary to law, but against all public policy. It would enormously delay the state in collecting its revenue. Cases cited *supra*. ( 3 ) The state board, in the discharge of its function, possesses both ministerial and judicial powers. It is compelled to construe the revenue law at every step and pass on many grave legal and constitutional questions. It must, also, by law ( R. S. sec. 6874 ) keep a fair and full record of its proceedings. It is a court. The supreme court of Missouri, in case of *Railroad v.* *State Board of Equalization*, 64 Mo. 308, says: "The board was required by law to keep a full record of its proceedings and decisions, but not of the evidence. That is no part of the record and proceedings of a court in any case until made so by a bill of exceptions, or otherwise provided by law." It is, therefore, needless to cite authorities to show that, when acting within its function, every presumption is in favor of the legality of its action. But see Cooley on Tax. ( 1 Ed.) 550, 552 ; Hilliard on Tax. ( 1 Ed.) 338, sec. 99. ( 4 ) The right to charge and take toll is a franchise, and may arise from prescription or grant from the legislature. It is an incorporeal hereditament and is a right issuing out of a thing corporate ( whether real or personal ), or concerning, or annexed to, or exercisable within, the same. The test is, in this or in any case,—Does the owner of a franchise charge another for the use of it ? If so, the charge or compensation is toll, no matter when, or where, or how, collected. 2 Blacks. 13, ch. 2, Chitty's Am. Ed. 1860 ; Jacobs' Law Dictionary, word, Toll ; Termes De La Ley, word, Toll ; 3 Kent, note *a*, p. 601 ; *State v. Haight*, 30 N. J. 447-8 ; Bouvier's Law Dic., word, Toll ; *Bridge Co. v. Patterson*, 74 N. Y. 365-70 ; Rapalje and Lawrence's Law Dictionary, word, Toll ; Webster's Unabridged Dictionary, word Toll.

BLACK, J.—For the tax-year ending August, 1883, the state board of equalization assessed the defendant's

OCTOBER TERM, 1888.   351

The State ex rel. Tillery v. Hann. & St. J. Ry. Co.

bridge over the Missouri river at Kansas City as a toll-bridge, placing the valuation at $500,000. The bridge being in two counties, one-half of this valuation was certified down to Clay county, and on that the county court levied taxes for that year. This is a suit to enforce the payment of the taxes thus levied. The circuit court gave judgment for plaintiff, except for the item called "funded debt tax," and as to that found for the defendant. Both parties appealed.

The case was here before on the plaintiff's appeal from a judgment sustaining a demurrer to the petition. While the petition states that the bridge is owned by the defendant, it also states that it is a toll-bridge, and does not disclose the fact that it is a part of the defendant's road. On this state of the pleadings we held, and could only have held, that the bridge was properly assessed as a separate structure. On return of the cause, defendant denied the above allegation, and averred the fact to be that the bridge formed a part of the railroad itself, and on this allegation the plaintiff made an issue of fact. It is therefore plain that we have to deal with another and a different question from that considered on the former appeal.

The Kansas City, Galveston & Lake Superior Railroad Company was created by the act of February 9, 1857, with power to build a railroad from Kansas City northward and to bridge navigable streams. By authority of law, the name was changed to the Kansas City & Cameron Railroad Company; and the fourth section of the amendatory act of March 11, 1867 (Laws of 1867, p. 144) provides: "The said railroad company shall have the same authority, rights and powers as are conferred upon the Kansas City Bridge Company incorporated by an act of the general assembly of February 20, 1865, and may, in connection with its railroad bridge, erect a bridge for the passage of teams, carriages and foot-passengers, and shall have the same right and

authority to receive compensation therefor as is granted
to the said Kansas City Bridge Company ; and all rail-
road companies whose roads shall terminate at or near
said bridge on either side of the Missouri river, or which
shall construct a branch road to such bridge, shall have
the right to run their cars and engines upon and over
such bridge at such times and on such terms as may be
agreed on between the companies respectively, and if
such companies shall not agree on such terms, then on
such terms as shall be prescribed by the governor of the
state."

The bridge act provides, among other things, that,
" When said bridge is completed the said company
shall be entitled to demand and receive tolls for cross-
ing the same, and to fix the rates of toll, of which a
schedule shall be kept conspicuously posted at each end
of the bridge, which rates shall be as follows, and shall
never exceed the same, to-wit: * * * And said
bridge company may permit any railroad company to
extend their railroad track over said bridge upon such
terms as may be agreed upon by said bridge company,
and such railroad companies." Acts of 1865, sec. 6, p.
240.

The Kansas City Bridge Company failed to build a
bridge ; but the Kansas City & Cameron Railroad Com-
pany constructed its road from Kansas City to Cameron,
and in doing so, and under the authority of law before
stated, built the bridge in question. Thereafter, and in
1870, that company and defendant were consolidated.

The structure is an ordinary railroad bridge with a
plank floor between and on either side of the rails for
the passage of teams, vehicles and the like ; and for
such use tolls are charged. The bridge and defendant's
tracks in connection therewith are used by a number of
other railroad companies for the passage of their trains,
they paying a rental therefor. These rentals paid by
other railroad companies are not denominated *tolls* in

the law under which the bridge was built, nor are they *tolls* in the sense in which we use the term when speaking of toll-bridges. From these facts and especially the law by authority of which this bridge was built there can be but one conclusion, and that is this : the bridge is an integral part of the roadbed and track of defendant's road from Kansas City to Cameron, with a highway toll feature attached to it as a mere incident, and a small and inadequate one at that. The tolls collected amount to only about $4,000 per annum.

With this conclusion, we now come to the statutes which provide for the assessment of toll-bridges, and for the assessment of railroad property ; and the question is, under which should the bridge be assessed ? The act of April 21, 1877, was carried into the Revision of 1879 without change. The first section, now section 6901, enacts that : "All bridges over streams in this state, or over streams dividing this state from other states, owned by joint-stock companies, and all such bridges where a toll is charged for crossing the same * * * and all property, real or personal, including the franchises owned by telegraph and express companies, shall be subject to taxation. * * * And the president or other chief officer of any such bridge, telegraph or express company, or the owner of any such toll-bridge, is hereby required to render statements of the property of such bridge, telegraph or express company, in like manner as the president or other chief officer of railroad companies are now or may hereafter be required to render for the taxation of railroad property." It is to be observed that railroad property is not mentioned in this act. .

A few days days after the passage of the above act, and on the second of May, 1877, the legislature passed another act relating to the assessment of railroad property (Acts of 1877, p. 366). The substantial parts of this act were carried into the Revised Statutes by way of

a revised bill.    Section 6866 makes it the duty of the president or other chief officer of every railroad com-·pany to furnish the state auditor, each year, by a designated date, a verified statement, "setting out in detail the total length of their road so far as completed, including branch or leased roads, the entire length in this state, and the length of double or side-tracks, with depots, water-tanks and turntables, the length of such road, double or side-tracks in each county, municipal township, incorporated city, town or village, through or in which it is located in this state; the total number of engines and cars of every kind and description, including all palace or sleeping cars, passenger and freight cars, and all other movable property, owned, used or leased by them on the first day of August in each year, and the actual cash value thereof."

The state board is then required to assess the aggregate value of all such property belonging to any railroad company, and to apportion that value to the counties, townships, etc., according to the mileage of the railroad therein.   Sec. 6876 declares:   "All property, real, personal or mixed, including lands, machine workshops, round-houses, warehouses and other buildings, goods, chattels and office furniture of whatever kind, owned or controlled by any railroad company or corporation in this state, not hereinbefore specified, shall be assessed by the proper assessors in the several counties, cities   *   *   *   wherein such property is located, under the general revenue laws of the state and the municipal laws regulating the assessments of other local property in such counties, cities   *   *   *   but the taxes on the property so assessed shall be levied and collected according to the provisions of this article."

Now it will be seen that the statute relating to the assessment of railroads includes and provides for the assessment of all railroad property of every kind and description.   The road and rolling stock must be assessed as a whole, and then a distribution made to the

counties according to the mileage therein. All other property must be assessed by the local assessors, as local property. All bridges belonging to the railroad company and forming a part of the road must be included in the assessment of the road, and cannot be detached for the purpose of taxation. Nor is there anything in the bridge act in conflict with what has just been stated. In former years, many bridge companies were created by special acts; they are now organized under the general law. Toll-bridges owned by such corporations are properly assessed under the bridge act, and this is true, though the bridge may be used in part for the passage of trains of cars. So, too, if the bridge is owned by the railroad company and is a part of the railroad it must be assessed and taxed with the road itself, and it thus enters into the aggregate value of the entire road; and in such cases it makes not a particle of difference that the bridge is in part a toll-bridge for the passage of teams, wagons and the like. The statutes must be construed together, and they are consistent with each other. Any other construction of the bridge act makes it repeal in part the law relating to the assessment and taxation of railroad property. It appears that in former years the state board assessed this and like bridges as constituting a part of the railroad, and that practice was in accord with the plain meaning of the law. It follows that the board had no power to assess this bridge as a separate structure. The assessment is void and lays no foundation for the levy of the taxes sued for.

The point is made by the plaintiff that as the state board has power to assess toll-bridges, it has the power to determine what bridges are toll-bridges; that as the value fixed by the board is conclusive, so is the finding that the bridge is a toll-bridge conclusive. The board has the power to assess toll-bridges, and it may be conceded that the courts would not review the finding as to

value; but it does not follow that it can change the character of the property. Unless the bridge comes within the bridge act, the board has no power to assess it under that act.

Authorities are also cited which show that, in general, assessing officers are not personally liable for erroneously listing persons or property for taxation, but they are without application to the present case.

With these conclusions it is unnecessary to consider the question made on the plaintiff's appeal. The judgment is therefore simply reversed. BARCLAY, J., not sitting; the other judges concur.