**[No. 3759.]**

AMES, COUNTY ASSESSOR, v. THE PEOPLE EX REL. TEMPLE, STATE AUDITOR.

1. TAXES AND TAXATION—RAILROAD PROPERTY—ASSESSMENT BY STATE BOARD OF EQUALIZATION—CONSTITUTIONAL LAW.

The act of the legislature, Session Laws, 1891, page 290, providing for the assessment of railroad property and other property by the state board of equalization is not in conflict with or inhibited by section 8, article 14 of the constitution providing for the election of county assessors.

2. SAME.

Section 15, article 10 of the constitution creating the state board of equalization and prescribing its duties does not limit the board to adjusting and equalizing values previously assessed by county assessors, but under that clause of the section requiring the board to perform "such other duties as may be prescribed by law," the legislature was authorized to pass the act requiring the board to assess railroad property and other similar property.

3. SAME.

The act of the legislature providing for the assessment of railroad and other property by the state board of equalization is not in conflict with section 6 of article 10 of the constitution forbidding the exemption from taxation of any property except certain enumerated kinds. The legislature may fix the *situs* of property for taxation and an act fixing a *situs* for taxation different from the actual physical *situs* is not an exemption in contemplation of the constitution.

4. SAME.

Section 10, article 10 of the constitution providing that "all corporations in the state or doing business therein shall be subject to taxation for state, county, school, municipal and other purposes, on the real and personal property owned or used by them within the territorial limits of the authority levying the tax," does not prohibit the legislature from providing for assessment as a unit of all the property of a railroad company used for railroad purposes, and apportioning the same amongst counties, municipalities and school districts in proportion to the number of miles of track therein. The act providing for the assessment of railroad property by the state board of equalization, Session Laws, 1891, page 290, is not in contravention of said section of the constitution.

5. SAME.

Sections 3, 4 and 5, article 10 of the constitution do not attempt to classify property for taxation, and the only limitation contained in either section upon the method of taxing property is with respect to ditches, etc., used in a certain way. There is no constitutional restriction against the legislature classifying property for taxation and providing methods of taxation so long as the discrimination is based upon the nature or use of property justifying it. The uniformity and equality enjoined by the constitution require only that the same means and methods be applied impartially to all the constituents of each class so that it operates equally and uniformly upon all persons and corporations in similar circumstances.

6. CONSTITUTIONAL LAW—TEST OF CONSTITUTIONALITY.

The test of the constitutionality of a statute is not what has been done, but what, by its authority, may be done, under it.

7. TAXES AND TAXATION—RAILROAD PROPERTY—ASSESSORS.

The fact that a county assessor, without authority, placed upon his

assessment roll the assessment of railroad property as made by himself in his official capacity is no justification for his refusal to place thereupon the assessment as made by the state board of equalization.

### Error to the District Court of Arapahoe County.

IN 1891 the general assembly passed an act to provide for the better assessment and collection of revenue. See Session Laws, 1891, p. 290. Section 1 of the act makes it the duty of the state board of equalization to assess all the property in this state owned, used or controlled by railway companies, telegraph, telephone, and sleeping or other palace car companies, with a proviso that real estate owned by any railway company, and not used for the convenient and proper operation of its railways, and improvements thereon, shall not be included in such assessments; but such real estate and the improvements thereon shall be assessed and taxed in the same manner as other real estate in the county where the same is situated.

Section 2 of the the act provides that the company, through its proper officers, shall furnish the board with a statement, properly signed and verified, showing the number of miles of main track, which includes franchises, rights of way, bridges, etc., the number of miles of side and secondary tracks and turn-outs, a description of all the real estate used, or necessary to be used, for the convenient and proper operation of the road, its depots, shops, and other buildings, a full list of rolling stock belonging to, or operated by, such railway company, and its tools, supplies, and other personal property. The statement must contain, also, such further information as the board of equalization may require.

The board, so far as practicable, must make a personal inspection and examination of the property in order to enable it to arrive at a fair and just valuation, which must be its full cash value; and in making the assessment is required to take into consideration all matters connected with the business of the corporation owning or operating this class of property necessary to enable it to make a just and equitable

assessment, and for that purpose may make all such inquiries and investigations as it may deem necessary.

After making the assessment the board is directed to transmit to the county clerk of each county through which the track of any railway company may run, a statement showing the length of the main track and the assessed value per mile of the same, as fixed by a *pro rata* distribution per mile of the assessed value of the whole property of such corporation.

Section 3 provides that the board of county commissioners of each such county, on receipt of such statement, shall cause to be entered in its records an order declaring the length of the main track in each school district and in each municipal corporation within the county, within or through which any railway line is located; also the amount of such assessment that is to be placed upon the tax roll for the benefit of such school district or municipal corporation, which amount shall be the assessed value of such railway as assessed by the state board and returned to the clerk.

The county clerk is to transmit a copy of the order to the county assessor, and the latter shall place such assessment upon the assessment roll of his county, subject to the same per centum of levy for different purposes as in the case of other property.

Such, in general, is the scheme provided for the assessment of railroad and kindred property. We need only consider the statute as applicable to railroad property, for it is conceded that, if the property of railroad companies may be lawfully assessed thereunder, so, also, may the property of the other enumerated corporations.

Acting in pursuance of the authority conferred by the foregoing act, the state board of equalization for the year 1896 assessed all the property in the state of Colorado owned, used, or controlled by railway companies, save and except the real estate and improvements thereon not used for the convenient and proper operation of their railways. A strict compliance with all the provisions of the act relating to the mode of assessment was alleged in the petition.

After the assessment was made the state board transmitted to the county clerk of Arapahoe county the statement required of it, and the board of county commissioners entered in its proceedings the order which section 3 of the act enjoins, and the county clerk transmitted a copy of the order to the county assessor, the respondent below and plaintiff in error here; but the county assessor refused to place such assessment on the assessment roll of his county, as the act directs, and this petition in *mandamus* was brought by the state auditor, in behalf of the state board, to compel the assessor to do so.

In his return to the alternative writ the county assessor interposed the following as defenses:

1. That the action of the state board of equalization in making the assessment under the act of the general assembly referred to in the petition is in conflict with section 8 of article 14 of the constitution, because the power to assess property is thereby exclusively vested in the various county assessors, and there is no power in the general assembly to provide by law for assessing property for purposes of taxation by any other person or board. The section reads as follows:

" There shall be elected in each county, on the first Tuesday in October, in the year eighteen hundred and seventy-seven, and every alternate year forever thereafter, one county clerk, who shall be *ex officio* recorder of deeds and clerk of the board of county commissioners; one sheriff; one coroner; one treasurer, who shall be collector of taxes; one county superintendent of schools; one county surveyor; and one county assessor."

2. That the duties of the state board are limited solely to adjusting and equalizing values, and to add to its powers that of fixing values the general assembly is forbidden by section 15 of article 10 of the constitution, which is as follows:

" There shall be a state board of equalization, consisting of the governor, state auditor, state treasurer, secretary of state, and attorney general; also in each county of this state, a

county board of equalization, consisting of the board of county commissioners of said county. The duty of the state board of equalization shall be to adjust and equalize the valuation of real and personal property among the several counties of the state. The duty of the county board of equalization shall be to adjust and equalize the valuation of real and personal property within their respective counties. Each board shall also perform such other duties as may be prescribed by law."

3. That under the provisions of the act a large portion of the property located within the territorial limits of municipal corporations in the state is exempted from taxation for municipal purposes, and that the act therein conflicts with that part of section 6 of article 10 of the constitution, which is as follows :

"All laws exempting from taxation property other than that hereinbefore mentioned (in a prior section, and not including railroad property) shall be void."

4. In so far as the act provides for the taxation of the property of corporations therein named in the several counties, school districts, municipal corporations, and other taxing districts of the state according to the length of the line of road within the territorial limits of such several taxing districts, regardless of the value of the property of the corporations within such territorial limits, the same is in conflict with section 10 of article 10 of the constitution, which is as follows :

"All corporations in this state, or doing business therein, shall be subject to taxation for state, county, school, municipal, and other purposes, on the real and personal property owned or used by them within the territorial limits of the authority levying the tax."

5. That the act providing for the taxation of "localized property" according to the length of one part of such property within the territorial limits of the authority levying the tax, rather than in accordance with the value of the property located within such limits, is not uniform with the law taxing other property therein according to its cash

value, and is, therefore, in conflict with the provisions of that part of section 3 of article 10 of the constitution, generally known as the "uniformity clause," providing:

"All taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws, which shall prescribe such regulations as shall secure a just valuation for taxation of all property, real and personal."

The foregoing objections in the answer or return are subdivisions of what counsel call a special demurrer. An additional objection is set up in the return, and designated as the third defense, that the state board in making its assessments failed and neglected to value certain real estate situate in Arapahoe county owned by the several railway companies owning property therein, and that by prorating the assessments of the railways upon the mileage basis prescribed in the act, large amounts of property in Arapahoe county were exempted from the payment of county and city taxes, and that the board undervalued certain property therein.

A fourth defense was that the respondent, as county assessor, himself had assessed the several railway corporations upon their property situate in Arapahoe county, and that he did this, as was his duty to do, under the constitution and laws of the state, and that his assessment was, and is, the only one to be placed upon the assessment roll of his county.

The petitioner filed a replication to the third defense in the nature of a general denial, and interposed a general demurrer to the fourth defense.

The cause was submitted upon the issues thus made, and under the issue of fact raised by the third defense to the alternative writ the findings were in favor of the relator, and upon the issues of law the court overruled the respondent's special demurrers setting up the constitutional objections, and sustained relator's demurrer to the fourth defense, and entered final judgment making the alternative writ peremptory, and therein directing the respondent, as the assessor of Arapahoe county, to place upon the assessment roll of his

county the assessment as made by the state board of equalization. To review this judgment the respondent prosecutes this writ of error.

. Mr. L. F. TWITCHELL, Mr. C. G. CLEMENT and Mr. F. C. GOUDY, for plaintiff in error.

Mr. BYRON L. CARR, attorney general, Mr. CALVIN E. REED, Mr. WILLARD TELLER, Messrs. WOLCOTT & VAILE, Mr. H. F. MAY and Mr. A. B. MCKINLEY, for defendant in error.

CHIEF JUSTICE CAMPBELL delivered the opinion of the court.

It is doubtful if respondent would have the right to urge the constitutional objections set up in his return to the granting of the peremptory writ, except the first one enumerated therein, had the relator properly and seasonably challenged his right to do so. It is a general rule that, in summary proceedings in *mandamus*, courts refuse to determine as to the constitutionality of statutes affect'ng the rights of third parties ; and grave questions of this character may not be raised by ministerial officers whose duty it is to carry out statutory directions. High on Extr. Remedies, § 143 ; *People ex rel. v. Salomon*, 54 Ill. 39 ; *State ex rel. v. Hagood*, 30 S. C. 519, 524 ; *People ex rel. v. Collins*, 7 Johnson, 549 ; *Tremont School Dist. v. Clark*, 33 Me. 482 ; *Smyth v. Titcomb*, 31 Me. 272, 286.

The reasons for this rule are apparent. Public policy and public necessity require prompt and efficient action from such officers, and when intrusted with the assessment of taxes and the collection and disbursement of revenue, they have no right to refuse to perform ministerial duties prescribed by law because of any apprehension on their part that others may be injuriously affected by it, or that the statute prescribing such duties may be unconstitutional. Individuals who might be injuriously affected may not doubt the constitutionality of

the law, or may waive their rights, or in person choose to test the validity of the enactment. This court has announced this doctrine in the cases of *People v. Ames*, 24 Colo. 422, *People v. Airy*, 21 Colo. 144, 155, and *Newman v. The People*, 23 Colo. 300, 311. *People v. Ames*, *supra*, was a case where the county assessor refused to extend a military poll tax on the assessment roll as the statute directed, on the ground that the act authorizing the tax was unconstitutional. The following language from the opinion is pertinent here :

" Aside from what has already been said, we think it would be dangerous to government to allow purely ministerial officers, such as respondents, to question the constitutionality of these various acts, or to refuse to extend any tax when required so to do."

But it appears from the statement of counsel that, while the controversy is real, it was the desire of all parties in any manner charged with the duty of, or claiming any power in, the assessment or levy of taxes upon this class of property, to have their respective rights and duties determined with as little interference as possible with the collection of the public revenue. To carry out this purpose, they chose the present form of proceeding in which to bring the case before the courts, and tacitly agreed to present the controverted questions as if all proper and necessary parties were present in an action where such questions could properly be litigated ; and in furtherance of the plan the county assessor, after the decree of the district court was entered, has observed the directions of the statute in extending on his books the assessments made by the state board.

Besides this, the governor of the state has heretofore propounded to this court under the constitutional provision giving him the right to do so, certain interrogatories involving the same or similar questions. At that time, upon a suggestion that in a case then pending in this court—the case at bar being the one referred to—such legal propositions were at issue, we withheld our answer upon the ground that they could better be considered and determined in a litigated case.

We are advised, also, that the general assembly, now in session, is desirous of obtaining the opinion of this court upon the matters now before us as a guide for proposed revenue legislation, but has not exercised its constitutional right of submitting interrogatories because of the supposition that the desired information will indirectly be communicated through an opinion to be delivered in this case.   In view of the foregoing, while neither countenancing nor denying the correctness of the course of the learned counsel, either as to the proceeding itself or as to the parties, we deem it our duty to consider and decide such of the important questions submitted as are *publici juris*, to the end that all the controversies between the public officials asserting rights, and claiming duties, relating to the assessment, levy, and collection of taxes may be terminated.   Such questions, however, as may affect the rights of private parties will not be determined, even though counsel insist upon it.

1.  The first objection is that the act conflicts with section·8 of article 14 of our constitution which, *inter alia*, provides for the biennial election of an assessor in each county of the state without prescribing his duties.   It is contended that this provision forbids the general assembly to authorize any other officer or board to assess any class of property.   The principle underlying this position is said to be that when a constitution provides for the election or appointment of an officer, though his duties be not prescribed, it is conclusively presumed that they are to be such as ordinarily attached to the office if it existed at common law, or under the laws of the pre-existing territory.   Applying this principle, it is said the duty of an assessor is to assess property for taxation.  We are cited to the decision in *Houghton v. Austin*, 47 Cal. 646, on what is said to be a similar constitutional provision.

An act of the legislature of California created a state board of equalization giving it power to add to, or deduct from, the valuation of property such per centum as was sufficient to raise, or reduce, it to the cash value.   This was held to be equivalent to a direction to the state board to make an as-

sessment, and, as such, in violation of article 11, paragraph 13 of the constitution of California of 1849, which is as follows: "Taxation shall be equal and uniform throughout the state. All property in this state shall be taxed in proportion to its value, to be ascertained as directed by law; but assessors and collectors of town, county, and state taxes shall be elected by the qualified electors of the district, county, or town in which the property taxed for state, county, or town purposes is situated."

The court said: "Whatever the nature of the evidence on which the assessor may be directed to act, he, the appraiser, must be elected by the voters of his town, county or district. It is the value which is to be ascertained, as (or in the manner) directed by law; but the officer who is to ascertain it, and the mode of his election, are fixed by the constitution."

It is to be observed that this decision was by a divided court, two out of the five judges dissenting. Moreover, it overruled a previous contrary decision of the same court. *Savings & Loan Society v. Austin*, 46 Cal. 415. Of the judges participating in the two decisions one half of them upheld, and an equal number overthrew the act. But, if no significance is given to this diversity of judicial opinion, the manifest difference between the California and Colorado section makes the decision inapplicable here. In the latter no particular duty is imposed upon the assessor; the former specifically declares that assessors of town, county and state taxes shall be elected by the qualified electors of the district where the property taxed is situated. That is, provision is specifically made in the constitution itself for the election of certain officers in a certain way, whose power or duty is prescribed as that of assessing the various taxes mentioned; and the constitution having thus named the officers and defined their duty, it was held that the legislature could not take from them the particular duty devolved upon them by the constitution, and confer it upon any other person or tribunal.

The constitution of North Carolina of 1868, article 7, section 6, provides that "the township board of trustees shall

assess the taxable property of their townships." Section 3 of the same article gives to the legislature power to tax franchises. In *W. C. & A. R. Co. v. The Board, etc.*, 72 N. C. 10, an act of the legislature, in so far as it purported to confer upon the state board of equalization in taxing the franchises of a railroad company authority to take into consideration in fixing their value the total property of the company, was held void, because, under section 6 aforesaid, the sole power of taxing the tangible, real and personal property of a railroad company is vested in township trustees; and since in ascertaining the valuation of the franchises in question the board included the value of all the railroad property, which the act enjoined, it was held unconstitutional.

But here, again, it is to be observed that the constitution itself prescribes the duty of the township trustees to assess property, which duty the legislature assumed to take away and vest in the board. In *People ex rel. v. Lothrop*, 3 Colo. 428, this court, as the respondent insists, has virtually approved of the doctrine announced in the California and North Carolina cases, and further recognition is given in *In re Taxation of Mining Claims*, 9 Colo. 635. In the *Lothrop* case the precise question now before us was not then before the court, but if it was, the views of the court as then constituted do not sustain the contention; but, in so far as any intimation in the opinion goes, the contrary view was recognized. In the latter case the only question was as to the constitutionality of certain bills before the general assembly for taxing mining claims, and the only point calling for a decision was whether or not the general assembly itself could assess property for the purposes of taxation. It was held that it could not, the court adding that, in general, the valuation of property for taxation must be ascertained by the county assessors, which, as to mining claims, no one disputes. The bills, however, were clearly unconstitutional because they provided for assessments by the general assembly, and the remark of the court that, in general, property is to be assessed by the county assessors, was not at all necessary to the deci-

sion, nor was there any intention to announce the rule that railroad property was to be assessed by them only.

Former decisions of this court in *Carlisle v. Pullman P. C. Co.*, 8 Colo. 320, 329, *D. & R. G. Ry. Co. v. Church*, 17 Colo. 1, and *Hall v. American Ref. Transit Co.*, 24 Colo. 291, either expressly or impliedly, lay down or recognize the doctrine that in this jurisdiction the state board of equalization may lawfully, under this or a similar statute, assess this class of property. It may be, as counsel assert, that the court's attention in these cases was not directed to the section of the constitution now before us, and for that reason respondent may now insist that the question is still open. But from a reading of the opinions in which the power was recognized, we think the court must have considered, though it did not expressly mention, this section. But if the question is *res nova* here, we see no reason for announcing a different rule from that supposed to have been hitherto in force. While it may be, and we may, for our present purposes, concede it to be true that except as limited by statutes, the office of assessor provided for in the constitution, without specifying the duties of the officer filling it, implies the usual and ordinary incidents thereof, the proper construction of the section is not that the legislature is prohibited by it from conferring upon some other tribunal power to assess a class of property which the assessors cannot, in the very nature of things, so assess as to bring about its just valuation commanded by other constitutional provisions.

Construing this section of the constitution, therefore, in connection with section 3 of article 10, which enjoins upon the general assembly the duty of providing by general law such regulations as shall secure a just valuation for taxation of all property; and also bearing in mind that section 7 of the same article expressly permits the general assembly to vest in corporate municipal authorities power to assess and collect taxes for all their purposes, we are of opinion that section 8 of article 14 in merely providing for the election of county assessors in each county does not inhibit the general assembly from pass-

ing a law authorizing the assessment of railroad property by some other tribunal or board if, in its wisdom, it determines that thereby a just valuation of this class of property may best be secured, and if the act on its face is not palpably ineffectual to accomplish that object. Just how far the general assembly may go in taking from county assessors the power to assess property for taxation, we need not decide. We confine this discussion to the class of property enumerated in the statute we are considering, and hold that the powers therein conferred upon the state board of equalization are not inhibited by section 8 of article 14.

Further discussion of the *Lothrop* case and of section 3, just mentioned, will be had elsewhere in appropriate places in this opinion.

2. It is strenuously argued that section 15 of article 10 limits the state board to adjusting and equalizing values previously ascertained by county assessors and to such other similar duties as under its last sentence the general assembly may prescribe. If, as we have already held, the sole power of fixing values is not vested in the assessors by the constitution, it might be, as defendant in error contends, that authority for conferring upon the state board power to assess railroad property could be found outside of section 15, and as belonging to the legislative branch of the government, whose control over matters of taxation is plenary, unless restricted by some constitutional provision.

But we are not confronted with the necessity for basing the ruling exclusively, or at all, upon this principle; for, under a reasonable interpretation thereof, we think the authority may be found in the section itself. In the *Lothrop* case, *supra*, it was held that the section does not give to the state board power to raise the aggregate values previously ascertained by assessors, and that the statutes then in force upon this subject did not purport to confer that power. Inferentially, at least, it might be contended that the holding was that the power to adjust and equalize does not include the power to assess. Upon this point this decision was fol-

lowed in *State v. Equalization Board*, 18 Mont. 473; and approved in *Gray v. Stiles*, 6 Okla. 455; 49 Pac. Rep. 1083, which latter case was reversed by the supreme court of Oklahoma territory in *Wallace v. Bullen et al.*, 6 Okla. 17; 54 Pac. Rep. 974. See also s. c., 52 Pac. Rep. 954, and *Renfrew. v. Webb*, 54 Pac. Rep. 448.

In *State ex rel. v. Thomas*, 16 Utah, 86; 50 Pac. Rep. 615, the supreme court of that state declined to follow the rule laid down in the *Lothrop* case although it sought to make a distinction between the constitution and laws of Colorado and Utah to account for the difference in the decisions.

We shall not, however, either question or review the *Lothrop* case upon this point, for we think that under the concluding portion of the section may be deduced the power of the general assembly to confer upon the state board authority to assess railroad property. This conclusion we have arrived at in discussing the first proposition, but in doing so the particular objection urged here was not considered.

But it is said that, in accordance with the maxim, *Noscitur a sociis*, only such duties as are similar to, or of the same general class as the adjusting and equalizing of values are contemplated. Just what duties are similar to, or of the same general class as equalizing and adjusting taxes, we are not told; but the latter are only steps in the laying of a tax, of which the first step is the act of assessing. All of these are of the same general class, and pertain to the general subject of laying a tax. If they are not, then certainly there are no other duties that can be called similar, or of the same general class as equalizing and adjusting, and hence the clause in question would be meaningless.

The constitution of Missouri, section 18 of article 10, has a similar clause, except that the language is: "It shall perform such other duties as are, or may be, prescribed by law;" while ours is, "such other duties as may be prescribed by law." In *H. & St. J. R. R. Co. v. State Board*, 64 Mo. 294, it was held that an act of the legislature empowering the state board to assess railroad property is in harmony with

their constitution. The difference in language between the two sections is sought to be made the basis for a distinction by respondent, which is not tenable. The statute of Missouri held to be constitutional was in force before the adoption of the Missouri constitution, and as the duties of the board were therein prescribed, and were, therefore, such " as are," and not such " as may " be thereafter imposed, the act for that reason, we are told, was in consonance with the organic law.

But if the respondent's contention is sound, that only other duties similar to or of the same general class as adjusting and equalizing can be conferred upon the state board, then if a statute prescribes duties not of the same class (which, it is said, assessing is not), it would be as clearly inconsistent with the constitutional provision if passed before, as if enacted after the constitution itself was adopted; for it is a familiar principal that laws enacted prior to, equally with those passed after a constitutional provision is adopted, if inconsistent with or contradictory to the latter cannot be upheld. This section of the constitution, therefore, is not a limitation upon the general assembly to pass the statute attacked, and as we have held upon the first branch of this case that the assessor is not by the constitution made the sole tribunal for assessing property, the act is valid, unless it contravenes some other part of the constitution not already considered.

3. The third objection, if not embraced in the fourth, is closely connected with it. Section 6 of article 10 forbids the exemption from taxation of all property except certain enumerated kinds, not including railroad property. The point made is that by the mode of apportioning values to the municipal corporations in which the main track lies upon a mileage basis, all the railroad property outside the limits of these municipal corporations is not taxed at all; and a considerable proportion, not less than two thirds within such limits is also exempted.

A partial exemption, of course, is equally obnoxious with a

complete exemption, and if the necessary operation of the act results as alleged, the statute ·cannot be upheld. The whole argument, however, is based upon the proposition that the property is assessed not where it is physically situated, but all along the main track, each municipal corporation being given for taxation a value dependent, not upon the actual value of the property therein physically located, but only such value of the entire property of the corporation as the length of the main track in the municipality bears to the total length of the line. This method of·distribution is said to be contrary to the rule that property must be taxed at its actual *situs*.

But it is settled by a long line of decisions that this rule is merely the law of the state that recognizes it; hence being a matter of legislation it is entirely competent for the legislature, unless restrained by the constitution, to fix for the purposes of taxation the *situs* of both real and personal property. *State R. R. Tax Cases*, 92 U. S. 575, 607; *Carlisle v. Pullman Palace Car Co.*, 8 Colo. 320; *Hall v. Amer. Ref. Transit Co.*, 24 Colo. 291; *Chamberlain v. Walter*, 60 Fed. Rep. 788; *Kentucky R. R. Tax Cases*, 115 U. S. 321; *R. R. Cos. v. Commonwealth*, 81 Ky. 492; *In the Matter of the Apportionment of Taxes*, 78 Mo. 596; *State ex rel. v. H. & St. J. R. R. Co.*, 97 Mo. 348; *C. & A. R. R. Co. v. The People*, 129 Ill. 571, and cases cited; *B. & M. R. R. Co. v. Lancaster County*, 15 Neb. 251; *Stanley v. Little Pittsburg M. Co.*, 6 Colo. 415; *People ex rel. v. Henderson*, 12 Colo. 369; *State ex rel. v. Severance*, 55 Mo. 378; *City of Dubuque v. Ill. Cent. Ry. Co.*, 39 Ia. 56.

Other cases might be cited, but the foregoing are sufficient. If, therefore, this section does not prevent the general assembly from fixing the *situs* of property for purposes of taxation, the statute is not in conflict with it. That such was not the purpose of the provision, but that such is not its effect, seem clear, and an examination of our previous decisions, just referred to, is to this effect, and we content ourselves with approving their doctrine. This brings us to the

fourth objection which presents the most serious and difficult question in the record.

4. The respondent has thus subdivided his argument upon this branch of the case, and we summarize it because in this way his position may be clearly and fully disclosed: first, that it is the locality, the *situs*, of the property that determines where it is to be taxed; second, that the practical working of the statute permitting the taxation of a portion of the taxable property physically situated in any taxing district to be determined by the length of a part of the property therein, unjustly discriminates in favor of, or against, the other taxpayers in such district; third, that the distribution of values in the different taxing districts upon the so-called mileage basis, violates that fundamental principle underlying all taxation that the taxing power rests upon the reciprocal duties of protection and support between the state and its citizens; fourth, that the act, in that it makes no provision for local taxation of local, tangible property, either in its nature or because of its use not necessarily distributable, and in its failure exclusively to apply the tax on such local property to the use and benefit of the taxing district where the property is physically situate, is, for each and all of these reasons, in conflict with the manifest object of the section, which is to fix the *situs* of property.

While this subdivision is convenient and well subserves the method of respondent's counsel in logically stating their position in all its bearings, we find, upon analysis, underlying and embracing these distinct statements, the general proposition that the main purpose of this section of the constitution, which is to fix the *situs* of property for purposes of taxation, is violated by this act. Our decision, therefore, upon this one central question will determine this branch of the case.

As already stated, the main, if not the only, object of the section is said to be the fixing of the *situs* of property. That is, the constitution itself declares that whatever property is situated in any particular taxing district, there, and not

elsewhere, it shall be subject to taxation, so that the district, to the extent of its full value, shall get the benefit of the tax for local purposes. If so, the conclusion drawn is that the general assembly does not have the power to apportion to any other taxing district any part of its ascertained value.

We are not now concerned with the wisdom of the provision. Our sole purpose is to ascertain its meaning, what was the intention of its framers, and of the people who ratified it. Unfortunately, the debates in the constitutional convention were not reduced to writing, or, if they were, the record of the proceedings, as preserved in the office of the secretary of state, does not contain them. Much light that might have been thrown upon the intention of the framers of the various provisions, had these debates been taken down and preserved, is forever lost. About all concerning this section that the record shows is that it was adopted in the precise terms in which it was first introduced.

It is a primary rule of construction that a constitutional or statutory provision is to be interpreted in accordance with the ordinary meaning of the language employed. No single provision, however, may be singled out and considered without reference to other kindred ones.

Taken literally, and, as respondent in his argument has done, without respect to any other part of the constitution, this section applies to all corporations in this state or doing business herein, both public and private. But we know from section 4 of the same article that municipal corporations are not within its scope; and from sections 3 and 5 that certain private corporations, as ditch companies, making a certain use of their property, and religious and charitable organizations, are exempt from its operation. But to withdraw them from this section, recourse must be had to those other provisions upon a similar subject.

It is fair to presume that the members of the constitutional convention knew that there are certain kinds of property, like that of railroad companies, which, when used in the operation of a railway, depend for their value largely, if not

wholly, upon the character of the use made of them, taken in connection with the value of other similar and connected property used by the company in the same way in other localities.

It is reasonable, therefore, to suppose that they would not insert a sweeping provision in the organic law so fixing the *situs* of property for purposes of taxation as to restrict the officers charged with the duty of ascertaining just valuations for taxation to methods that necessarily would prove abortive as to some of the classes. On the contrary, we might expect to find that the constitution has left to the discretion of the general assembly both the power to classify the subjects and objects of taxation and to prescribe suitable methods for ascertaining the values of the different classes,—a different method for each, if necessary to secure a just valuation. Conceding for the purposes of the opinion that the object of the section now before us is to give to each taxing district the benefit for taxation of the property within its limits, let us see what its true meaning is.

Applying the same rule of construction by which we discovered that the language employed, though not limited, does not include municipal corporations and certain private corporations, we shall discover, as the respondent himself concedes, that it does not include all classes of property, and, as we shall now proceed to show, does not operate as a limitation upon the general assembly in dividing property into classes for purposes of taxation, or in providing suitable and different methods for ascertaining the value for taxation of the different classes thus named.

There is, however, one exception to be noted to the last observation, for section 3 of the same article expressly inhibits the general assembly from taxing, or causing to be taxed, separately from the land, ditches, canals and flumes owned and exclusively used by a corporation for irrigating its own lands. And while the main portion of the ditch may be situate in one county and the land in another, nevertheless in ascertaining values the two must be taken together.

Ditches, canals and flumes thus used may, by this section of
the constitution, be considered as constituting one class for
purposes of taxation, and the method for ascertaining the value
of this class is likewise fixed.

By section 3, as we shall see in considering the next gen-
eral branch of the case, the general assembly is not restricted
in classifying property for taxation, or in providing different
methods for ascertaining the value thereof, save as to ditches,
etc.; and, indeed were it not for this particular limitation the
general assembly would be wholly unrestricted in dividing
property into classes for purposes of taxation.

In arriving at the meaning of sections 10 and 3 of this arti-
cle it will not do to consider either separate and apart from
the other. Having the power under section 3 to classify pro-
perty and prescribe various methods for ascertaining the value
of the different classes, section 10 should be interpreted in
harmony with the existence of that power. To section 10
full effect, as claimed by the respondent, cannot be given
without infringing upon section 3; and section 3 cannot be
given its necessary operation without conflicting with what
is claimed by him for section 10. Yet counsel for respond-
ent, while insisting that the entire value of a railroad must
be ascertained by the county assessors by adding the values
of all its fractional parts, themselves concede, as already sug-
gested, that intangible property like franchises, and transitory
property like rolling stock, are not within the provisions of
section 10, because the former in its essence, and the latter
from the character of its use, have no fixed *situs*. But the
terms " real and personal property " include them just as cer-
tainly as they do real estate and horses and wagons, and if
they are to be excluded (as we think they are) it is because,
as in the case of public corporations, and charitable and re-
ligious organizations, some other constitutional provision re-
quires it.

We think that section 3 authorizing the classification of
property for taxation and sanctioning necessary differences
in the methods of taxation, including different modes of as-

sessment, and containing, as it does, a direction to the general assembly to prescribe such rules as shall secure a just valuation for taxation of all property,—should be read into section 10 ; and when that is done that the latter section, in order to harmonize with it, is not a limitation upon the power of the general assembly to provide for the apportioning, for taxing purposes, of such of the property of a railroad company, both real and personal, as is convenient and proper for the operation of its railway, to the various taxing districts, like municipalities and school districts, upon the mileage basis, as prescribed in this act. Thus the two sections are given their due and proper effect, and each, thus construed, harmonizes with the other.

We are, however, cited to the case of *Salt Lake County v. State Board of Equalization*, 18 Utah, 172; 55 Pac. Rep. 378, as holding unauthorized such a method of apportionment under section 10 of article 13 of that constitution, which is exactly like section 10 of article 10 of ours, except that persons, as well as corporations, are subject to its provisions. Just what meaning was given to this constitutional provision by the court in arriving at its conclusion does not appear.

Respondent, however, does not claim, nor would the opinion warrant it, that the decision of the point involved depended upon its interpretation, for the statute itself expressly required an apportionment of the total assessment or valuation of the rolling stock to the several counties in proportion to the value of such property in each county, which the court held meant the average number of cars and engines used in the county during the year. The decision was merely concerning the statutory mode of apportioning values. It is to be further observed that the real controversy between the county and the state board was whether this rolling stock should be assessed in the county where the principal place of business of the company was carried on, or should be distributed to all the counties along the line of the road, rather than as to the method of distribution, though the court did decide what was the proper way to apportion the values.

We do not consider that this decision is against the conclusion which we have reached, but if it is, we would decline to follow it. It is pertinent to remark that, under this branch of the case, the objection is not that railroad companies escape any part of their just tax, but that one county, or taxing district, like Arapahoe or the city of Denver, does not get of the total tax the full benefit to which the valuable "localized" property of the railroad company, therein situate, entitles it.

In the method of laying a tax, either as to the assessment or the apportionment, the general assembly is not restricted by the constitution, and unless the legislation is palpably unjust, oppressive or inadequate, courts will not substitute their judgment for that of the legislature. Many tribunals of final resort, including the supreme court of the United States and our own court, as will be seen from the cases already cited, have held that the method of ascertaining and distributing values of railroad property like that prescribed in the statute under consideration, if not the only rational one, is, at least, the best and fairest thus far invented. We are in accord with their doctrine, and while not prolonging this opinion by quoting from the cases, we refer to them as authority for our conclusion.

It follows that in order to secure a just valuation for taxation of this class of property, all of it that is used for the convenient and proper operation of the railway may be assessed as a unit, and the valuation thus ascertained may be apportioned to the various taxing districts upon a mileage basis. Indeed, construing, as we should, sections 3 and 10 together such of the property of a railroad company, real and personal, as is used for the convenient and proper operation of its railway can properly only be assessed and apportioned for taxation as a unit; and the apportionment upon a mileage basis, as this act prescribes, will come as near to doing exact justice as it is possible to do.

Counsel is right in urging that taxation can be justified only upon the protection to life and property that the govern-

ment gives in return for it. This principle receives due recognition in the act before us. Uniformity and equality in all respects can never be exactly attained, and all that legislation has hitherto been able to accomplish, or perhaps ever will be able to achieve, is to approximate that end. This method of apportionment, in our judgment, gives to each local taxing district its just proportion of tax, that is to say, each taxing district gets for purposes of taxation the just valuation of the property physically situate within its territorial limits; for the value of property situate therein cannot be made to depend upon its so-called natural *situs*, entirely disassociated from the use made of it, but that value, in great measure, depends upon its connection with every other part of the corporation property so used, and situate in every other taxing district in which any part of its railroad lies, considered always in connection with the character of the use made of it.

Thus the command of the constitution is obeyed, and, in fact, to each taxing district is given a fair valuation of the railroad property within its territorial limits, and that is all the section requires. When respondent maintains that real estate and other property of a railroad company having what they call a natural *situs* in any particular municipality or school district may be valued without respect to its use, and disassociated from the rest of the railroad property,—in other words, that it may be valued the same as other and physically similar property situate in the same taxing district, but without reference to the character of its use,—he assumes, with no showing to support it, the very proposition in question, viz, that a just valuation is thus secured. We have, at least, tried to show, and all the authorities cited hold, that the method of ascertaining and apportioning values prescribed in this act more nearly secures for each local taxing district the actual value of the property therein situate than would one intrusting the duty in this respect to the local authorities (under a mode adapted to other classes of property), which do not possess, and cannot so well obtain, the information

necessary to enable them to fix and distribute values of this class of property.

5. Under this branch of the case the argument proceeds upon the assumption that sections 3, 4 and 5 of article 10 have classified all the objects of taxation, and that having separated them into five classes, it was beyond the power of the general assembly to add thereto. The five classes are said to be as follows : first, mines and mining claims; second, ditches, canals and flumes used for irrigation ; third, property of the state, or some of its subordinate divisions; fourth, buildings, etc., used for religious worship, schools, etc. ; fifth, all other kinds of property.

To this we reply that the proviso of section 3 and sections 4 and 5 relate entirely to the exemption, partial or entire, of certain kinds of property from taxation; and it is inexact to say that exempting property *from* taxation is dividing it into classes *for* taxation. But it is clear that there is no attempt in this section to classify property for .taxation. Certain exemptions, it is true, are therein provided for, but the only limitation contained in either section upon the method of taxing property that is subject to taxation at all is with respect to ditches, etc., when used in a certain way. In all other particulars, both with respect to the method of taxation and the classification of property for taxation, there is no restriction. So long as the discrimination is based upon the nature or use of property, justifying it, there is nothing to forbid the legislative classification for taxation of all species of property, except ditches, etc., mentioned in the section, or to prevent the fixing of the valuation of the different classes by different methods.

The uniformity and equality enjoined by. the constitution require only that the same means and methods be applied impartially to all the constituents of each class, so that it operates equally and uniformly upon all persons and corporations in similar circumstances. *Kentucky R. R. Tax Cases, supra; People v. Henderson*, 12 Colo. 369.

The fundamental error of respondent's position and the fallacy of much of his argument throughout the case are due to a misapprehension, or at least, a misstatement of the true rule which courts should observe in construing provisions of the constitution. While not putting the contention in that precise form, counsel, nevertheless, would have us say that a limitation upon the general assembly in the exercise of legislative functions may be found in the constitution outside of some express limitation, or one that arises by necessary implication out of an express limitation. In other words, he would have us treat a state constitution, pertaining to the legislative department, as one of grants rather than limitations, and so in testing the validity of an act of the general assembly under some constitutional provision it is virtually argued that if, in scanning the constitution as a whole, or the particular provision, the statute is found to be out of harmony with some supposed intent of the people pervading that instrument, which may be conjectured to have been in the minds of the people when they voted in favor of its adoption, but which was not therein expressed or necessarily implied from something expressed, the courts ought, nevertheless, to declare the act void because of some supposed inconsistency between it and the intent referred to. But such is not the true or recognized rule. A state constitution, in this respect, is one of limitations and not of grants. In all matters which are proper subjects of legislation the power of the general assembly is plenary, unless limited by some express constitutional provision, or by some necessary implication therefrom. That body, then, not being limited in classifying the subjects or objects of taxation, or in providing modes for ascertaining the value thereof, or the method of levying the tax, in so far as section 3 bears upon the question, the act before us is not in conflict therewith.

The rule of construction which we have announced is well expressed by Mr. Justice Helm in *People ex rel. v. Henderson, supra*, wherein he says: " We also bear in mind the familiar

principles that, except as controlled by constitutional limitation, the authority of a state legislature in enacting laws is plenary, and that, unless there be a clear and positive repugnancy between a statute and the constitution, the statute must be upheld." In numerous other cases this rule of construction has been approved by this court, but it is not necessary to cite them here, as it has become firmly established in this jurisdiction.

6. The third defense presents issues of fact which, upon conflicting evidence, were resolved in favor of the relator. Upon this ground alone the ruling of the district court may be affirmed. But the issues involve private rights of railroad companies and other taxpayers which ought not to be determined without giving them an opportunity to be heard; and for this additional reason the judgment below will not be disturbed. Besides this, the defense alleges a failure of the state board properly to discharge the duties imposed by the act. This concerns the manner of the execution of the act by those charged therewith, and an investigation of their conduct cannot be had here. The test of the constitutionality of a statute is not what has been done, but what, by its authority, may be done under it.

7. The fourth defense is not different from that interposed as a first ground of the special demurrer, and we have already held that the county assessors do not possess the constitutional power to assess railroad property, but, on the contrary, that this power is properly by the statute vested in the state board of equalization, and not in the assessors. The fact that the respondent, without any authority, placed upon his assessment roll, or threatened to do so, the assessments of railroad property as made by himself in his official capacity, affords him no justification for his refusal to place thereupon the assessment as made by the board.

In investigating the important questions determined, we acknowledge the great assistance which the exhaustive briefs of counsel for both parties have been to us. Other counsel,

not officially connected with the case, have also favored us with oral and printed arguments.

The conclusions reached require an affirmance of the judgment, and it is so ordered.

*Affirmed.*