## No. 12,269.

CURTIS, ASSESSOR *v.* MONTROSE COUNTY HIGH SCHOOL DISTRICT.

Decided January 11, 1929.

Messrs. MOYNIHAN, HUGHES & KNOUS, for plaintiff in error.

Mr. EARLE BRYANT, for defendant in error.

*En Banc.*

MR. JUSTICE BUTLER delivered the opinion of the court.

THE trial court awarded a peremptory writ of mandamus, directing L. E. Curtis, as county assessor of Montrose county, to extend upon his books a levy of 5 mills for the current expenses of the Montrose county high school district.

Upon application made by the district, the board of county commissioners made a levy of 5 mills for current

expenses of the district for 1929, which is 1 mill in excess of the limit prescribed in sections 8411 and 8412 of the Compiled Laws. The Colorado tax commission approved the application by the district for such increased levy of 5 mills. The county assessor extended the levy for 4 mills only, refusing to extend it for 5 mills; hence this proceeding.

Section 15 of the Act of 1909 concerning county high school districts (C. L. § 8411) provides that the amount of tax certified to the county commissioners for the maintenance of the high school in any high school district, "shall *in no case exceed four mills* on the dollar, of the assessed valuation of the high school district." Section 16 (C. L. § 8412) provides that the county commissioners shall levy annually a high school tax, "*not to exceed four mills* on the dollar of the assessed valuation."

In 1913 there was passed an Act entitled "An Act in relation to public revenue and limiting the levy of taxes," etc. (S. L. c. 137, C. L. § 7204 *et seq.*). Section 1 of that Act (C. L. § 7204) is as follows: "The power of the board of county commissioners of each of the several counties of the state to fix rates of levy annually for the creation of funds out of which to meet and defray the ordinary *county* expenses including the support of the poor and for the purpose of raising a fund to meet any unforeseen contingency expenses of the *county* is hereby limited as follows:"

Section 2 (C. L. § 7205) prescribes a maximum limit of 6 mills in counties having an assessed valuation of $1,000,000 or less. Sections 3 to 10, both inclusive (C. L. §§ 7206-7213), prescribe maximum limits, graduated, according to assessed valuation, from a maximum limit of 5 mills in counties having an assessed valuation of more than $1,000,000 and not to exceed $2,000,000, to a maximum limit of 1 mill in counties having an assessed valuation in excess of $400,000,000.

Section 11 (C. L. § 7214) was amended in 1923 (S. L. c. 160) so as to read as follows: "Except as herein

otherwise provided all statutory rates, making provision for the general revenues of the state and for state institutions, *schools*, towns, cities and for all other purposes (except to provide for the payment of bonds and interest thereon), are hereby so *reduced* as to prohibit the levying of a greater amount of revenue for any year hereafter than was levied the preceding year, plus five per cent.

"Except as herein otherwise provided, the exercise of the taxing power by the General Assembly and by every taxing body to which authority has been delegated by the General Assembly to exercise the power of taxation, is hereby limited (except to provide for the payment of bonds and interest thereon), so as to prohibit the levying of a greater amount of revenue for any year hereafter than was levied the preceding year, plus five per cent."

Section 12 (C. L. § 7216) provides: "If any board of levy or any officer that is charged with the duty of levying a tax in any taxing district, except the state, shall be of the opinion that the amount of tax limited by *this* act will be insufficient for the needs of such taxing district for the current year, the question of an increased levy may be submitted to The Colorado Tax Commission and it shall be the duty of The Colorado Tax Commission to examine into the needs of such taxing district and ascertain from such examination the financial condition thereof and if, in the opinion of The Colorado Tax Commission, such taxing district is in need of additional funds the said Commission may recommend an increased levy for such taxing district above the limits *hereinbefore* applied and such taxing district is authorized to make such excess levy not exceeding five mills on the dollar of the valuation of such district; Provided, that in case The Colorado Tax Commission refuses or fails to recommend such increased levy or that the excess levy not exceeding five mills is insufficient to meet the required needs of such taxing district, the question may be submitted to the voters of such taxing district at a general

or at a special election called for the purpose and in the manner provided by law for calling special elections in such taxing district. * * * If three-fourths of the votes cast at any such election shall be in favor of the increased levy as named in said election notice, then the officers charged with levying taxes, may make such increased levy for the year voted upon *and thereafter the limitation of this act shall apply unless an increased levy for the particular year shall be voted at another election in like manner.*"

The defendant in error contends that section 12 authorizes in the present case the increased levy in excess of the 4-mill limit fixed by sections 15 and 16 of the Act of 1909 (C. L. §§ 8411, 8412). We cannot sustain that contention. The section does not purport to cover all cases where the amount of the tax limited by law is insufficient for the needs of the taxing district, but, by its express terms, is confined to cases where the amount of the tax "limited by *this* act" will be insufficient for such purpose.

What is the amount of tax "limited by *this* act," that is to say, by the Act of 1913? As we have seen, sections 1 to 10, both inclusive (C. L. §§ 7204–7213) impose maximum limits upon levies to meet county expenses, and county expenses only. The only section that can have any application to a county high school district is section 11 (C. L. § 7214) amended in 1923. That section does not purport to fix any maximum limit. The words "all statutory rates, making provision for * * * schools" recognize the existence of a rate fixed by some statute *other than the Act of 1913*. As section 12 of the Act of 1913 is expressly confined to cases where the amount of tax is "limited by *this* act," it would seem clear that it was not intended to affect the maximum limit prescribed in the Act of 1909. In our opinion, the purpose of the Act of 1913, so far as county high school districts are concerned, is, not to permit a levy in excess of

the 4-mill limit prescribed in the Act of 1909 (C. L. §§ 8411, 8412), but to forbid, within that limit, an increase in any year of more than 5 per cent in excess of the levy for the next preceding year, except to provide for the payment of bonds and the interest thereon. For example, if the levy for one year is 2 mills, the levy made by the board of county commissioners for county high school district purposes (except as above stated) for the next succeeding year cannot exceed 2 mills, plus 5 per cent. Whether, in such case, section 12 would permit an increase up to the statutory limit of 4 mills prescribed in the Act of 1909, is doubtful. The concluding provision in section 12 to the effect that "thereafter the limitation of this act shall apply unless an increased levy for the particular year shall be voted at another election in like manner" is intelligible when applied to the limitations of the act with reference to levies for county purposes; but it is not clear how it could be applied to the provision forbidding a levy for school purposes in excess of 5 per cent over the levy for the next preceding year. This would seem to indicate that the provision (§ 12) permitting a levy in excess of the amount "limited by *this* act" was not intended to have any application whatever to cases covered by section 11. However that may be—we do not pass upon that question at this time—we are of the opinion that the Act of 1913, supra, does not have the effect of permitting a levy for county high school district purposes in excess of the 4-mill limit prescribed in the Act of 1909, supra.

In one part of his brief counsel for the defendant in error questions the right of the plaintiff in error to interpose the defense that the Act of 1913 is unconstitutional. The plaintiff in error, however, does not in this court, nor did he in the trial court, claim that the act is unconstitutional; he merely contends that the act is not capable of the construction placed upon it by the defendant in error. In the latter part of his brief counsel for the defendant

in error says: ''The question to be determined in this matter, as seen by defendant in error is, whether or not it must be held to a limit of four mills in accordance with sections 8411 and 8412, C. L. 1921, or whether section 7216, C. L. 1921, authorizes a right to extend to defendant in error and similar organizations, an increased levy. * * * From the situation as it now exists, it is necessary that a decision be given, determining whether or not county high school districts such as defendant in error are bound entirely by sections 8411 and 8412, C. L. 1921, or if section 7216, C. L. 1921, affords them an additional levy. * * * As stated by plaintiff in error in his brief, both parties hereto, realize the importance of the question raised, whether the tax for high school purposes may legally exceed 4 mills; * * * '' From this we infer that he does not insist upon the point first suggested, but desires, as do counsel for the plaintiff in error, a determination of the question that is of the utmost importance to all county high school districts in the state. It is a matter of public concern that that question be determined while the General Assembly is in session, so that if that body should consider any change in the statute desirable at this time, it may be made at this session. Therefore, following the course pursued in *Ames v. People,* 26 Colo. 83, 90–92, 56 Pac. 656, we have addressed ourselves to the all-important question, and to that alone.

The judgment is reversed.

MR. JUSTICE MOORE did not take part in the decision.